UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CASE. NO. 21-CR-076(KBJ) |
| | : | |
| ADAM CHAZIN, | : | |
| Defendant. | : | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing proceeding.

I. **Background**

On October 7, 2019, the Metropolitan Police of the District of Columbia's (MPDC) Child Exploitation Task Force (CETF) received a Cybertip from the National Center for Missing and Exploited Children (NCMEC) regarding suspected child pornography. *See* PSR ¶ 17. According to the Cybertip, Dropbox's Legal Team reported to NCMEC that forty-eight files containing suspected child pornography had been uploaded to a Dropbox account that was identified by the username "John Smith," ESP User ID "634453072," and associated with the e-mail address adamchazin1996@hotmail.com. *Id.*

The Dropbox records show that the account was accessed on March 27, 2019 from an internet protocol (IP) address associated with the Defendant's residence. *Id.* at ¶ 18. The Dropbox account contained thirty-five videos and thirteen partially downloaded files. The majority of these files depict pre-pubescent minor females engaging in sexually explicit conduct. The following is a description of some of the videos found inside this Dropbox account, in a folder titled "-1young":

    a) A clothed pre-pubescent female child, wearing pajamas and laying in between the legs of an adult man. The adult man's penis is exposed to the camera, and erect. The child is shown placing the man's penis in her mouth and grasping his penis with her hands.

    b) A pre-pubescent female child observed laying on her back with the lower half of her body exposed to the camera. An adult man's penis can be seen rubbing and penetrating the child's vagina.

    c) A clothed pre-pubescent female child, seen placing an adult man's penis in her mouth, and holding the man's penis with her hands. The videos show the man removing the little girl's shirt, and the man can be seen ejaculating onto the child's chest and face.

*Id.* at ¶ 19.

On February 10, 2020, law enforcement executed a search warrant at the Defendant's residence. *Id.* at ¶ 20. The Defendant was present in the residence during the execution of the search warrant. *Id.* When asked by law enforcement if there were any firearms in the home, the Defendant stated that there was an "AR" under his bed in his bedroom. *Id.* at ¶ 21. During the search of the Defendant's residence, a Ruger AR-556 was found inside an Amazon delivery box, under the bed in the Defendant's bedroom. *Id.* The Ruger AR-556 was dissembled into the lower receiver and upper receiver. *Id.* Eight magazines with the capacity to hold up to thirty-one rounds of 5.56 ammunition were also found inside the same Amazon delivery box. *Id.* at ¶ 22. Three of the magazines were loaded with thirty rounds of 5.56 ball ammunition; one was loaded with thirty-one rounds of 5.56 ball ammunition; one was loaded with twenty-eight rounds of 5.56 ball ammunition; one was loaded with twenty-two rounds of 5.56 ball ammunition; and two were

unloaded. *Id.* Law enforcement also located three Glock pistol magazines which were each loaded with seventeen rounds of 9mm ammunition. *Id.* at ¶ 23. These rounds were a mix of hollow point and ball round ammunition. *Id.*

After being placed under arrest, the Defendant admitted that he had purchased the Ruger AR-556 in Texas, and that he had registered the firearm in Texas. *Id.* ¶ at 25. The Defendant said that he had transported the firearm from Texas to Poolesville, Maryland, before transporting the firearm with magazines into the District of Columbia in April 2019. *Id.* A records check by the MPDC Gun Registry Unit found that the Defendant does not possess a permit to carry a firearm in the District of Columbia, and that the recovered Ruger AR-556 is not registered in the District of Columbia. *Id.* at ¶ 26.

Two Apple iPhones belonging to the Defendant were also recovered during the search of his home. *Id.* at ¶ 24. These devices both contained images depicting the sexual abuse of children, including children as young as toddlers, and other images involving S&M conduct. *Id.*

On February 3, 2021, the Defendant was charged by way of Information with three counts including, the Possession of Child Pornography; Possession of an Unregistered Firearm; and Attempted Possession of a Large Capacity Ammunition Feeding Device. *Id.* at ¶ 1. He was arraigned on the Information on March 2, 2021, and the Court adjourned this matter for a Change of Plea Hearing and Sentencing on May 24, 2021. *Id.* at ¶ 4.

    II.    <u>**A Guidelines Sentence of 78 to 97 Months Accurately Reflects the 3553(a) Factors**</u>

In determining a reasonable sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a).[1] These factors include:

---

[1] "Since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), the Guidelines serve only an advisory function. *Id.* at 245, 125 S. Ct. 738.

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;
>    (C) to protect the public from further crimes of the defendant; and
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and
> (3) the kinds of sentences available;
> (4) the applicable sentencing guidelines range for the offense;
> (5) pertinent policy statements issued by the U.S. Sentencing Commission;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a); *see also United States v. Pyles*, No. CR 14-00006 (RJL), 2020 WL 376787, at *2 (D.D.C. Jan. 23, 2020); *United States v. Mitchell*, No. CR 05-00110 (EGS), 2019 WL 2647571, at *7 (D.D.C. June 27, 2019). A district court, however, "need not consider every § 3553(a) factor in every case." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008); *see also United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017).

### A. The Nature and Circumstances of the Offense

There is no doubt that the Defendant's criminal conduct is egregious. His offenses have been perpetrated against the most vulnerable members of our society - children. Children depicted in images and videos depicting their sexual abuse are traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized and re-traumatized each and every time an individual, like the Defendant, views the images for their own sexual gratification. As eloquently explained by the Sixth Circuit in a child pornography case:

---

Nevertheless, even in a post-*Booker* world in which the Guidelines are not binding, the sentencing court 'must calculate and consider the applicable Guidelines range" as its starting point.

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.
>
> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Additionally, this Defendant made the choice to transport dangerous weapons into the District of Columbia, and he failed to properly register them. He haphazardly stored these guns, and ammunition, under his bed where they could have easily fallen into the wrong hands and caused devastating results. Given the serious nature of the Defendant's criminal conduct, a Guidelines sentence of between 78 to 97 months is appropriate.

**B. History and Characteristics of the Defendant**

By all accounts, the Defendant appears to have had a normal childhood, and he enjoys familial support. PSR ¶¶ 53-56; 59-67. It also appears that the United States Army afforded the Defendant with opportunities that many are forced to go without. PSR ¶¶ 82-83. Despite all of the support and opportunities, this Defendant has engaged in a disturbing pattern of accessing, uploading, viewing and possessing images and videos depicting the sexual abuse of children. The fact that this is an ongoing course of conduct is significant because it demonstrates that the

Defendant did not suffer a temporary lapse in judgment, nor did he merely make one mistake in the case that has brought him before this Court.  The records provided by Dropbox indicate that the Defendant uploaded numerous images and videos depicting the sexual abuse of children to his Dropbox account between December of 2016 and June of 2017.  The Government has attached the upload records provided by Dropbox to this Sentencing Memorandum as Government's Exhibit 1.  While it is unclear how many times the Defendant accessed this account, based on the CyberTip from NCMEC, he was continuing to access the account as recently as March 27, 2019.  *See* PSR ¶ 18.  Additionally, when his cellular phones were seized by law enforcement in February of 2020, they contained images showing toddlers being sexually abused, as well as images depicting a child with a mask over her eyes, and her wrists bound, being orally raped by an adult man. *Id.* at ¶ 24.  Therefore, the Defendant's true character and the repeat nature of his criminal conduct suggest that a lengthier sentence, as contemplated by the Guidelines, is necessary and appropriate in this case.

The Government acknowledges that the Defendant has no prior criminal record.  However, his lack of a criminal history was accounted for when determining the applicable Guidelines range.  Therefore, it should not serve as a reason to vary from a Guidelines sentence.  Furthermore, as this Court is well-aware, the online sexual exploitation of children is a crime that is committed in secret.  This secrecy, combined with the overwhelming presence of digital devices and the near universal access to the internet, makes detection of these criminal offenses difficult.  In the present case, the Defendant was able to access, collect, and view child pornography for over two years before his criminal conduct was spotted by Dropbox and reported to NCMEC.  When fashioning the appropriate sentence in a child exploitation offense, the absence of an arrest record should be viewed with caution, because it is well-known that

children often do not disclose sexual abuse, and that these types of crimes are wildly underreported.  *See United States v. Gregory Todd Numan*, 3:160cr000065(TMB)(DAK)(February 26, 2018:  Expert Testimony of Clinical Psychologist Darrell Turner).  In *Numan*, Dr. Turner provided expert testimony to the Court to explain why a reliance on the lack of prior criminal history of an offender charged with sexual offenses committed against children does not serve as a reliable indicator of their future risk for reoffending.  As explained by Dr. Turner:

> "One of the main problems is the fact that these offenses are among the most undetected offenses that there are. This is not like bank robbery or murder, where it's generally assumed and expected that it's going to be detected and reported. We know from research that about only about five percent of sexual offenses against children are ever reported.
>
> Of those, of that five percent, about another five percent result in a conviction. So we're talking about an exponentially small number of offenses that are reported and accounted for. So it's sort of akin to saying there were only four drunk people in New Orleans in Mardi Gras this year because there were only four arrests for public intoxication, and it's not a good representation of what's actually going on out there. So to say it without the qualifier that, hey, this is a gross underestimate, but you know, so far, this is what we've been able to find, I think, is misleading and very, very dangerous."

at pages 22-23.  *See also* K. London, M. Bruck, S. J. Ceci & D. W. Shuman, *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways Children Tell?*, 11 PSYCHOLOGY, PUB. POL'Y & L. 1, 194-226 (American Psychological Association, 2005)(finding in a study of adult retrospective victim studies about child sex abuse, approximately 60 – 70% of adults sexually abused as children did not recall disclosing the abuse during childhood);  *See also* D. W. Smith, E. J. Letourneau, B. E. Saunders, D. G. Kilkpatrick, H. S. Resnick & C. L. Best, *Delay in Disclosure of Childhood Rape: Results from a National Survey*, 24 CHILD ABUSE &

NEGLECT 2, 273-87 (2000)(the results of the study found that only 12]% of child rape victims' assaults were reported to law enforcement authorities.).  As such, the fact that the Defendant lacks a criminal record, given the ways in which these types of crimes are committed and the reluctance and inability of the victims to disclose, should be given less weight by the Court when determining the appropriate sentence, given the nature of the offense he is pleading guilty to.

Probation suggests that the Defendant's past military service may provide the basis for a variance.  *See* PSR ¶ 144.  The Government disagrees.  In the present case, the Defendant will be convicted of an offense under chapter 110.  As such, a downward variance would only be warranted if the court finds that there exists a mitigating circumstance of a kind or to a degree that (I) that has been affirmatively and specifically identified as a permissible ground of downward departure by the sentencing guidelines or policy statements; (II) has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and (III) should result in a different sentence.  *See* 18 USC § 3553(b)(2)(A).

U.S.S.G. § 5H1.11 specifically states that "Military, civic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."  As such, a downward variance based upon the Defendant's military service is not appropriate because it has not been identified as a possible ground for downward departure, and it was specifically taken into consideration by the Sentencing Commission in formulating the Guidelines.  *See Id.*  Furthermore, the Defendant's military service was neither lengthy, nor particularly noteworthy.  He was in the Army for approximately 3 ½ years.  *See* PSR ¶ 82.  When asked why he decided not to re-enlist, the Defendant stated that the Army "wasn't for him."  *See Id.* at ¶ 83.  Notably, the Defendant spent the majority of his time in the service in Fort Hood, Texas, and was there

from April of 2016 until the time he deployed to Korea. *Id.* at ¶ 82. During this timeframe, while serving in the U.S. Army, the Defendant uploaded videos and images depicting the sexual abuse of children to his Dropbox account on various dates between December of 216 and June of 2017. *See* Government's Exhibit 1. Considering the fact that the Defendant was committing criminal offenses involving the sexual exploitation of defenseless children during the brief period of time he was performing his military service, it is hardly appropriate that such service would form the basis of a mitigating circumstance in this child exploitation case that would warrant a downward variance from a Guidelines sentence. As such, a sentence of between 78 and 97 months is appropriate in this case.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and Provide Just Punishment for the Offense

This factor is known as the "just desserts" concept, answering the need for retribution so that the punishment fits the crime and the defendant is punished justly. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.*

The sexual exploitation of children, including the viewing and possession of child sexual abuse material, has devastating consequences for the children depicted in these images and videos. Once they find their way onto the Internet, images and videos depicting the sexual abuse of a child

will circulate in perpetuity because individuals make the repetitive and purposeful decision to collect, save, and trade them for their own sexual gratification.

Furthermore, as noted above, consumers of child pornography, like the Defendant, create a market and demand for the production of these images and videos, which depict the sexual abuse and exploitation of real children. These consumers therefore contribute to the cycle of abuse and are in part responsible for the harm suffered by children used to produce the images and videos in their collections. *See United States v. Goff,* 501 F.3d 250, 259-260 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"). In *United States v. Goldberg,* the Seventh Circuit stated:

> The district judge was influenced by the erroneous belief that a sentence affects only the life of the criminal and not the lives of his victims. Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced. [Citations omitted].

491 F.3d 668, 672 (7th Cir. 2007).

Thus, even if consumers of child pornography do not themselves molest children, their actions contribute to the abuse of children. The Court need only review the Victim Impact Statements from the children depicted in the images that this Defendant collected to understand the devastating impact that the Defendant's actions have caused these children and the adults who love them. Therefore, with respect to 18 U.S.C. § 3553(a)(2)(A), a sentence of between 78 and 97 months would provide "just punishment" for the Defendant's offenses, promote respect for federal child exploitation laws, and reflect the seriousness of his offenses and child pornography offenses in general.

### D. The Need for the Sentence Imposed to Afford Adequate Deterrence

Congress, the Supreme Court, and the Sentencing Commission believe general deterrence is a very important factor when considering an appropriate sentence. *See United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (the sentence would deter Fry and "others who may be inclined in doing similar kinds of things."); *see also United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product"); *Osbourne v. Ohio*, 495 U.S. 102, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand"); *United States v. Goff*, 501 F.3d 250, 261 (3rd Cir. 2007) ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand. The greater concern under the Guidelines is for the welfare of these exploited children. The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").

18 U.S.C. § 3553(a)(2)(B) dictates that a sentence of between 78 and 97 months is appropriate because the Defendant's sentence should be lengthy in order to deter the criminal conduct of others. As stated in *Goldberg*, "[s]entences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for trafficking in child pornography, the greater the customer demand for it and so the more will be produced." 491 F.3d at 672. *See also Goff*, 501 F.3d at 261 (stating in child pornography possession case that

"deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing").

As such, this Court is in the position to send a loud and clear message to those individuals, like the Defendant, who are willing to exploit children for their sexual gratification. This is a serious crime of violence which warrants a Guidelines sentence.

**E. The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant**

A sentence of between 78 and 97 months is necessary in order to protect the public from further crimes of this Defendant. As detailed above, the sexual exploitation of children and child pornography offenses present a serious danger to the community which results in severe mental, emotional, and physical trauma to the countless number of children who are victimized by offenders like the Defendant and others with a demonstrated sexual interest in children.

When fashioning a sentence, Courts should consider that sex offenders have a high rate of recidivism. *See Lombard v. United States*, 44 F. Supp. 3d 14, 26 (D.D.C. 2014) (noting that the lower court's concerns about recidivism was supported by substantial authority (citing *Smith v. Doe,* 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ("The risk of recidivism posed by sex offenders is frightening and high.") (citations omitted); *McKune v. Lile,* 536 U.S. 24, 33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (noting that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault"); *United States v. Irey,* 612 F.3d 1160, 1214 (11th Cir.2010) ("[T]he threat of recidivism by a pedophile who has sexually abused a child is appalling.") (citation and quotation marks omitted); *United States v. Allison,* 447 F.3d 402, 405–06 (5th Cir.2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.")); *see also United States v. Allison*, 447 F.3d 402, 405-406 (5th Cir. 2006) (Congress

explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders). Indeed, As Judge Posner recently wrote:

> We need evidence-driven law just as we need evidence-driven medicine. Statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children. R. Karl Hanson, Kelley E. Morton & Andrew J.R. Harris, "Sexual Offender Recidivism Risk: What We Know and What We Need to Know," 989 Annals of the N.Y. Academy of Sciences 154, 157 (2003) (tab.1). Some studies show a high rate of recidivism among pedophilic sex offenders generally, ranging from 10 percent to 50 percent. Ryan C.W. Hall & Richard C.W. Hall, "A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues," 82 Mayo Clinic Proceedings 457, 467 (2007). Another study found that only 6.8 percent of consumers of child pornography had been charged with a new child-pornography offense within 4 years but that the percentage rose to 9.5 percent within 6 years. Angela W. Eke, Michael C. Seto & Jennette Williams, "Examining the Criminal History and Future Offending of Child Pornography Offenders: An Extended Prospective Follow-up Study," Law & Human Behavior, Nov. 19, 2010 (tab.1), www.springerlink.com/content/h4616862621x8616/ (visited June 23, 2011).

*United States v. Garthus*, 552 F.3d 715, 720 (7th Cir. 2011).

The Defendant's course of criminal conduct created a threat to the must vulnerable members of the public, even without proof of a contact sexual offense against a child. As such, a Guidelines sentence, is appropriate.

**F. The Need to Avoid Unwarranted Sentence Disparities among Defendants with Similar Records Who Have been Found Guilty of Similar Conduct**

Section 3553(a)(6) directs courts to consider avoiding *unwarranted* disparities among defendants "with similar records who have been found guilty of similar conduct." It "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010). When an offense is uniquely serious, courts will consider the need to impose "stiffer sentences" that "justif[y] the risk of potential disparities." *United States v. Jones*, 846 F.3d 366, 372 (D.C. Cir. 2017); *see also United*

*States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) (concluding that a within-Guidelines sentence for a child-pornography offense did not produce an unwarranted disparity when the images distributed by the defendant "were much more aggressive and troubling than the images distributed by other offenders" who received lesser sentences).

It is true that in many cases Judges in this District have departed from the Guidelines range in child exploitation cases. However, as detailed above, this Defendant's criminal conduct spanned the course of three years. Furthermore, he was in possession of an unregistered firearm, and a large capacity ammunition feeding device. Therefore, he is not similarly situated to the vast majority of offenders who come before the Court, charged with a possessing child pornography on a single date, who are not charged with other criminal offenses. Therefore, a Guidelines sentence here would not create an unwarranted sentencing disparity, because it accurately reflects the egregious nature of this Defendant's conduct and takes into account the other counts that he is charged with.

### III. The Victims are Entitled to Restitution

In child pornography cases, restitution is mandatory to any person "harmed as a result of" a defendant's crime pursuant to 18 U.S.C. § 2259. *See* 18 U.S.C. § 2259(a), (c); *see also United States v. Monzel*, 930 F.3d 470, 476 (D.C. Cir. 2019); *United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015) ("Pursuant to 18 U.S.C. § 2259, the victims of certain federal crimes, including possession of child pornography, are entitled to mandatory restitution."). Restitution includes "the full amount of the victim's losses," which may include any costs incurred by the victim for:

    (A) Medical services relating to physical, psychiatric, or psychological care;
    (B) Physical and occupational therapy or rehabilitation;
    (C) Necessary transportation, temporary housing, and child care expenses;
    (D) Lost income;
    (E) Attorneys' fees, as well as other costs incurred; and
    (F) Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(a), (b)(3); *see also United States v. Hite*, 113 F. Supp. 3d 91, 94 (D.D.C. 2015).

Here, the offense of conviction is a child pornography trafficking offense, as defined in 18 U.S.C. § 2259(c)(3). Therefore, the court shall determine the full amount of the victims losses and shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000. 18 U.S.C. § 2259(b)(2).

In *Paroline v. United States*, 134 S. Ct. 1740 (April 23, 2014), the United States Supreme Court faced a circuit split over the interpretation of 18 U.S.C. § 2259, specifically over "how to determine the amount of restitution a possessor of child pornography must pay to the victim whose childhood abuse appears in the pornographic materials possessed." *Paroline*, 134 S. Ct. at 1716. In *Paroline*, the defendant possessed two images of the victim who was seeking restitution. The Court's answer to this question involved three steps.

First, *Paroline* held that, because the statute defined a "victim" as someone "harmed as a result" of the offense, restitution under § 2259 was proper "only to the extent the defendant's offense proximately caused a victim's losses." *Id*. at 1722. Second, the Court held that "proximate cause" under § 2259 did not require strict but-for causation. *Id*. at 1726-27. Recognizing that under the circumstances of most child pornography possession cases – where losses resulted from harm caused by the trafficking of a victim's images by numerous "geographically and temporally distant offenders acting independently, and with whom the defendant had no contact," *id*. at 1725, - the Court held:

> In this special context, where it can be shown that a defendant possessed a victim's images and that a victim had outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying

> § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id*. at 1727. The Court made clear that, where the victim's losses are "the product of the acts of thousands of offenders," a restitution order should not be "too severe" but must not be merely "a token or nominal amount." *Id.* That is, in part, because a restitution order under § 2259 serves "twin goals," the first being to "help[] the victim achieve eventual restitution for all her child-pornography losses" and second to "impress[] upon offenders the fact that child pornography crimes, even simple possession, affect real victims." *Id*.

Third, the Court provided sentencing courts the following guidance for how to determine the proper amount of restitution under this standard. *Id*. The Court noted that a sentencing court's goal should be to assess "the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses," taking into account any "available evidence." *Id*. at 1727-28. The Court emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts must exercise "discretion and sound judgment" in fashioning restitution awards. *Id*. at 1728. The Court suggested several factors to be considered, including: (1) the number of defendants convicted of possessing the victim's images; (2) the number of future offenders likely to be caught and convicted; (3) whether the defendant had any role in the initial production of the images; (4) whether the defendant reproduced or distributed the images; (5) how many images the defendant possessed; and (6) "other facts relevant to the defendant's relative causal role." *Id*. "These factors need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders. They should rather serve as rough guideposts for determining an amount that fits the offense." *Id*.

Congress has since amended Section 2259 to both codify *Paroline*'s basic approach and to set a restitution floor of $3,000. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, 132 Stat. 4383 (2018). As detailed the Restitution Request materials submitted to this Court under seal, some of the victims depicted in the images and videos the Defendant accessed, viewed, and possessed are seeking restitution for costs associated with attending psychotherapy and/or counseling, medications, loss of income, loss of housing, and for various medical expenses. The following victims in these known series of images have made restitution requests with the Court: Lightouse1; Sweet White Sugar; and Vicky. For the reasons set forth above, the Government respectfully requests that the Court shape an appropriate restitution award of at least $3,000 per victim to be paid by the Defendant.

## IV. Conclusion

The Government submits that a Guidelines sentence, between 78 and 97 months, is a reasonable sentence in this case and is "sufficient, but not greater than necessary to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

Dated:  May 10, 2021  Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY

 /s/  *Amy E. Larson*
Amy E. Larson, N.Y. Bar Number 4108221
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
 Telephone: (202) 252-7863
 Email: Amy.Larson2@usdoj.gov