### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | **Case No: 1:21CR00076-001** |
| | ) | |
| **vs.** | ) | **The Hon. Ketanji Brown Jackson** |
| | ) | |
| | ) | **Sentencing Date: May 24, 2021** |
| **ADAM CHAZIN,** | )_ | |
| **Defendant.** | ) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Mr. Adam Chazin, through counsel, respectfully submits this Memorandum in Aid of Sentencing in support of a probationary sentence. This sentence reflects the nature and circumstances of Mr. Chazin's offense and his history and characteristics, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2).

Adam Chazin is a 25-year-old Army veteran with no prior criminal convictions or contact with the criminal justice system. By all accounts, he is a kind, respectful and compassionate young man. He will appear before the Court for sentencing following his conditional pre-indictment guilty plea to possession of child pornography one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4) and weapons offense charges. At the time law enforcement searched his home, Mr. Chazin had recently moved back to the area after completing a four-year tour of service in the United States Army in 2019. He was Honorably Discharged from the military and enrolled in Montgomery College in the fall of 2019 under the GI Bill. He then moved to South Carolina to pursue a relationship and work.

Mr. Chazin's future looked promising after enduring a painful childhood. His parents divorced when he was 5 years old. By the time he was nine, his younger brother had been

diagnosed with leukemia and his medical condition was grave.  Adam found himself without the support of his parents during his formative years because they were spent tending to his brother, who had to be taken to appointments with medical specialists because of complications in his treatment.

Adam looked at his post-military life as a chance to pursue his own career and start a family.  But his actions in this case have shattered his plans. This offense, and the severe consequences it has brought, has irreparably altered the course of his life.  Mr. Chazin lost a serious relationship when the charges were filed and had to move from South Carolina, back to Washington, D.C.  He will have to register as a sex offender where he lives, works or attends school.

Mr. Chazin is before this Court because downloaded a large number of files which he believed contained adult pornography.  It was not until reviewing the files that he became aware that some of the files depicted minors.  When Mr. Chazin came across files that depicted child pornography, he sometimes closed them and continued to possess them.  Other times, he deleted them.  Mr. Chazin derives no pleasure from child pornography.  In order to assist the Court for sentencing, he underwent a forensic examination by Dr. Katherine Snably, who finds that he does not fit the definition of pedophilic disorder.  An analysis of his computer and search history, reveal that there were no searches for child pornography.

Nevertheless, he understands the seriousness of the danger and abuse that is involved in such videos.  Mr. Chazin understands he should have acted with more care and reported and deleted all the child pornographic content the moment he became aware of the contents.

As he has done his whole life, Adam has adapted to difficult circumstances and is determined to live a productive and law-abiding life.  When the instant offense was charged in

February, he found gainful employment and is again working full-time.   In entering a pre-indictment plea, he has done all he can to atone for his conduct.  For these and other reasons set forth below, we respectfully ask this Court to sentence Mr. Chazin to serve five years of probation.  We submit that a probationary sentence, under these circumstances, is sufficient but not greater than necessary to achieve the purposes of federal sentencing in this case.

### The Government's Position

This Court should reject outright the government's cookie cutter approach to justice in this matter.  In its memorandum, the government advocates for a guidelines sentence of 78-97 months without any additional substantive analysis.  Of course, sentences like these are driven by the guidelines, which scores of courts have rejected as draconian.  Indeed, as noted below, the guidelines are inflated and do not consider an individual's actual conduct or the possibility of re-offense.   The instant offense involves possession, not production.  As noted below, Mr. Chazin's conduct is not nearly as egregious as many offenders that are prosecuted in terms of volume and distribution of such material.    Below we detail similar cases in which courts have given probationary or lenient sentences involving similar or more significant conduct.

I.     **The Advisory Sentencing Guidelines Range**

Mr. Chazin pled guilty to a criminal Information charging him with Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2); Possession of Unregistered Firearm, in violation of 7 D.C. Code, § 2502(a); and Attempted Possession of a Large Capacity Ammunition Feeding Device, in violation of 22 D.C. Code § 1803, 7 D.C. Code §2506.01(b).

1.   Superior Court Charges

With respect to the firearms offenses, we want to make clear that Mr. Chazin bought and possessed the firearm and ammunition lawfully while he resided in Texas.  Given his vast firearm

experience in the military, he was accustomed to using and possessing them.  Mr. Chazin posed

no danger to anyone by possessing those weapons and ammunition.  The same weapons and

ammunition are lawful in locally in Virginia and Maryland.   Mr. Chazin realizes he should not

have possessed the items in the District of Columbia.  He simply stored them at his home.  He is

remorseful.  Now, he will be a convicted felon and will not be able to possess any weapons.  As

such, we respectfully submit a probationary sentence is warranted for those charges.

      2.   <u>Possession of Child Pornography</u>

The maximum sentence for a violation of 18 U.S.C. § 2252(a)(4)(B) is 20 years of

imprisonment and a term of supervised release of at least 5 years but not more than life. A violation

of 7 D.C. Code, § 2502.0l(a)) carries a potential maximum penalty of 1 year imprisonment and/or

a $2,500 fine.  A violation of 22 D.C. Code, Section 1803, 7 D.C. Code, Section 2506.01 (b))

carries a potential maximum penalty of 180 days imprisonment and/or a $1,000 fine.

Mr. Chazin does not dispute that the advisory Sentencing Guidelines range is, as the PSR

reflects, 78 to 97 months of imprisonment.  The extraordinary advisory range applicable to Mr.

Chazin, however, is derived substantially from the application of various specific offense

characteristics that are found in most, if not all, possession of child pornography cases.  Pursuant

to U.S.S.G. § 2G2.2, the base offense level for Mr. Chazin's offense is 18.  Mr. Chazin's offense

level is increased 2 levels because some of the materials he possessed contained images of minors

under the age of 12.  *See* U.S.S.G. § 2G2.2(b)(2).  Because some of the images Mr. Chazin

possessed depicted conduct involving infants or toddlers, his offense level is increased an

additional 4 levels. *Id*. at § 2G2.2(b)(4). Mr. Chazin's offense level is further increased by 2 levels

because he used a computer during his offense conduct. *Id*. at §2G2.2(b)(6). Finally, Mr. Chazin's

offense level is increased an additional 5 levels because he possessed more than 600 images. *See*

*id*. at § 2G2.2(b)(7)(D).[1]   After applying a three-level downward adjustment for acceptance of responsibility under § 3E1.1 (which the government agrees Mr. Chazin has earned, *see* Plea Agreement at 4), Mr. Chazin's total offense level is 28.   Mr. Chazin's lack of criminal record places him in Criminal History Category I.   The resulting advisory Guidelines range is 78-97 months.[2]

Calculating the baseline advisory Guidelines range, however, is merely the first step in the federal sentencing process.   *See Gall v. United States*, 552 U.S. 38 (2007).   After calculating the baseline Guidelines range, the court must determine whether to apply any Guidelines-based departures to adjust the applicable Guidelines range.   *Id*.   Once the final advisory Guidelines range is determined, the Court then must consider the factors set forth in 18 U.S.C. § 3553(a) and decide whether a variance from the Guidelines is warranted based on the circumstances and features of the case and the defendant before it.   *Id*.   For the many reasons discussed next, Mr. Chazin asks this Court to grant him a variance from the advisory Guidelines' range and to find that a sentence of five years of probation is "sufficient, but not greater than necessary" to serve all the purposes of federal sentencing.   *See* 18 U.S.C. § 3553(a).

## II.   **The Section § 3553 Factors**

Section 3553 requires a sentencing court to impose a sentence that is "sufficient, but not greater than necessary" to comply with four purposes of federal sentencing.   18 U.S.C. § 3553(a).

---

[1] It should be noted that Mr. Chazin, did not, in fact, possess 600 or more images.   Rather, he possessed approximately 35 videos.   *See* PSR ¶19.   Under the Guidelines, however, each video is counted as 75 images.   *See* § 2G2.2, app. n. 4(ii).   If videos and images were treated similarly under the Guidelines, Mr. Chazin would have received a 2-level increase as opposed to the 5 levels that were applied.

[2] The plea agreement also provides notice of the defendant's Sex Offender Registration and Notification Act (SORNA) requirements, including his requirement to register as a sex offender for 15 years.

Those four purposes are the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).  In addition, § 3553 requires district courts to consider the following factors in imposing sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need to provide restitution to any victim(s). 18 U.S.C. § 3553(a)(1)-(7).  For the reasons that follow, Mr. Chazin submits that a probationary sentence along with the requirement that he register as a Sex Offender, comports fully with the sentencing objectives and principles set forth in § 3553.

A.    *The History and Characteristics of Mr. Chazin.*

1.    <u>Background</u>

Born in Rockville Maryland, Adam Chazin is the eldest son of Ron Chazin and Kim O'Farrel.  He was raised primarily in a modest home in Poolesville, Maryland.  They divorced when Mr. Chazin was five years old and his brother, Shane, was 3 years old.



Mr. Chazin graduated from Poolesville High School in 2014.  He applied to admission at Louisiana State University ("LSU)" but did not get accepted.  He then moved to Baton Rouge and started community college with hopes to earn admission to LSU.  He became homesick after a semester and attended Montgomery College before deciding to enlist in the United States Army in 2015.  Mr. Chazin performed admirably in the military and serving our Country.  Adam completed boot camp and advanced training in a logistics and supply unit.  He served in Fort Hood Texas and completed a detail in Korea.  He gave his best effort in the military but ultimately decided not to reenlist to pursue a career as a civilian.

After his discharge, Mr. Chazin enrolled in Montgomery College in the fall of 2019 under the GI Bill.  He later moved to South Carolina to pursue a relationship, with his then-girlfriend, and to work at a medical device company.  He moved in with his girlfriend and her child and her parents and younger sister.   Mr. Chazin self-disclosed the instant offense to her.  She was supportive and she and her parents were amenable to him remaining in the family home in South Carolina.  Unfortunately, Pretrial Services was unable to arrange for courtesy supervision in South Carolina, so Mr. Chazin moved back to Washington, D.C.  His girlfriend told the probation officer that she was not concerned about Mr. Chazin being around her young daughter or her teenage sister.  She described him as a good person.

Since his return to the District, Mr. Chazin has performed well on high intensive supervision and is working full time.   Mr. Chazin hopes to return to college to earn his bachelor's degree.

2.   <u>Character Letters</u>

By all accounts, Mr. Chazin is a kind, respectful and compassionate young man.  Mr. Chazin is always willing to help care for those around him, especially those in need.  The letters

submitted on his behalf, echo Mr. Chazin's devotion to his family.  The letters contain countless anecdotes of individuals who have been touched by Mr. Chazin's kindness and selflessness.  *See* Letters Attached as Exhibit A.

Jacob Wheeler, a longtime friend of Mr. Chazin and his family, attests to Mr. Chazin's good nature.  While Mr. Wheeler was undergoing a difficult time, Mr. Chazin reached out to him and offered to help Mr. Wheeler.  Mr. Chazin was there for Mr. Wheeler not only for emotional support, but also provided much needed shelter.  Mr. Wheeler writes, "I truly believe without Adam during that time, I would not have been able to gather myself and succeed moving forward both financially and mentally."  *See* Letters Attached as Exhibit A (Letter from Jacob Wheeler).

Adam's mother, Kim, echoes Mr. Chazin's selfless and kind nature.  She recounts that in "In typical Adam-fashion, after being in the Army for just a few months, Adam asked if his friend Joel from boot camp could come home for Christmas holidays since Joel's parents would be unable to afford to fly him back to California."  *See* Letters Attached as Exhibit A (Letter from Kim O'Farrell).  This example and others recounted in the numerous letters submitted to this Court illustrate the kind of young man Mr. Chazin truly is.

3. <u>Forensic Evaluation Demonstrates that Mr. Chazin Does Not Pose a Risk</u>

8

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████   ████████████████████████

██████████████████████████

We respectfully submit that Dr. Snably's opinion supports a probationary sentence.

B.      *The Nature and Circumstances of Mr. Chazin's Offense and the need for the sentence imposed to reflect the seriousness of the offense.*

The nature and circumstances of Mr. Chazin's offense is recounted in the Statement of Facts as well as in the PSR.  For those reasons, this pleading will not go into great detail regarding topics covered in those submissions.  Mr. Chazin does not dispute the importance of the laws he violated, and he sincerely regrets his illegal conduct. That said, it bears pointing out the context and the circumstances that landed Mr. Chazin in this predicament.

While using the messaging application "Anonymous Chat", Mr. Chazin began communicating directly with an individual from a chat group.  *See Report* at 6.  The individual messaged Mr. Chazin "Hey, I'll send you some pics if you send me some." *Id.* at 7.  Mr. Chazin presumed the individual was referring to pornography but never expected the person would send him child pornography.  Without previewing any material, Mr. Chazin clicked on the link that the individual sent to him and downloaded it to his Dropbox account. *Id.*

Once the files were downloaded, Mr. Chazin began viewing them.  Importantly, the first pictures and videos he viewed contained adult pornography.  *Id.*  However, as he continued looking at the files, he noticed that some of the content contained individuals of questionable and possibly minor age.  *Id.*  When Mr. Chazin opened a file that he believed depicted a person of a possible young age, he either deleted it or simply closed it and did not view it again.  *Id.*  Mr. Chazin did

not review all of the files in one sitting, rather he parsed through them over the course of several days. *Id.* Over time, as he continued viewing the files content that clearly pre-pubescent children and either deleted it or closed it and did not look at it again. *Id.* Mr. Chazin did not masturbate to the pornography depicting pre-pubescent or "questionable" individuals. *Id.*

Mr. Chazin derives no pleasure from child pornography. He did not set out to download or view child pornography. He did not distribute or produce child pornography. He understands the seriousness of the danger and abuse that is involved in such videos. Mr. Chazin understands his actions demonstrated a lapse in judgment and he should have deleted the files and alerted the authorities. Mr. Chazin deeply regrets his actions.

The child pornography sentencing guidelines largely stem from the belief that those who view child pornography are actually child molesters. *See United States v. Kelly,* 868 F. Supp. 2d 1202, 1207-08 (D.N.M. 2012) (noting that "empirical testing disproves the fear that the typical child pornography defendant will go on to molest children," and "[a]ny Guideline based on unsupported fears, rather than actual evidence, is far more likely to render an unreasonable sentence"); *United States v. Cruikshank*, 667 F. Supp. 2d 697, 703 (S.D. W.Va. 2009) ("Rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies for the depraved producers and publishers.") Mr. Chazin's conduct and characteristics are a far cry from the offenders Congress was contemplating. Mr. Chazin has never been inappropriate with a child, he did set out to download child pornography, he never distributed the content to anyone else, and he promptly accepted full responsibility for his offense. Further, Mr. Chazin did not pay for or trade any images or videos. Under these circumstances, where no economic incentive was given to anyone to create or distribute more content, there was no "market effect" from Mr. Chazin's regrettable actions.

This Court should give due weight to the fact that Mr. Chazin never even sought out this type of content, let alone consumed it for pleasure, or molested a child.   His search history is devoid of any searches for child pornography and he has searched adult websites to view adult material.   In addition, as his mental health evaluation notes, Mr. Chazin has a healthy sexual interest in women his own age, and that is the sort of content he historically sought to view or download.   Again, he does not derive any pleasure from child pornographic content and did not intent to view any such content.   The actions that bring Mr. Chazin before this Court are a clear example of poor judgment, not of a dangerous predator.

Mr. Chazin understands that the nature of the offense to which he has pled guilty is serious but asks that this Court to give weight to the fact that he did not seek out or search for child pornography.

C.     *The Need to Avoid Unwarranted Disparity Among Similar Offenders.*

We respectfully submit that that a probationary sentence would avoid any unwarranted disparity between Mr. Chazin's sentence and sentences imposed on defendants with similar conduct.   With respect to disparities, courts from around the country have imposed probationary sentences in cases like the one before this court. *See, e.g.* Jelani Jefferson Exum, *What's Happening with Child Pornography Sentencing?,* 24 Fed. Sent'g Rep. 85, 89 (2011) ("growing consensus among district court judges and the broader legal community that federal sentences for possession of child pornography are too harsh"); U.S. Sentencing Commission, Results of Survey of U.S. Dist. Judges, Jan. 2010 through Mar. 2010, Question 8 (June 2010) (finding that 70% of District Judges believe the Guideline range for child pornography possession is too high).

This case is aligned with the case of *United States v. Hawkins*, 1:13-cr-00244 (KBJ) Mr. Hawkins was charged with possession and distribution of child pornography. Mr. Hawkins, who

expressed an interest in children as young as 11 years of age, uploaded five child pornography videos a YouTube website.  He directly distributed at two child pornographic videos to an uncover agent. He uploaded more than 35 child pornographic images to a Skydrive account.  Mr. Hawkins downloaded or received child pornography on his personal computer for over six months, and when his computer was seized, at least 17 videos and 16 images depicting child pornography were discovered.  Mr. Hawkins' offense level of 30 and Criminal History Category I, placed his Guideline's sentencing range at 97 to 121. The Government asked for a 24-month sentence and this Court sentenced Mr. Hawkins to three months of incarceration followed by 73 months of Supervised Release and a $100 Special Assessment.

Like Mr. Hawkins, Mr. Chazin was very young when he committed the offense, 20-years old.  Unlike Mr. Hawkins, Mr. Chazin did not distribute any images or upload them to a website of a popular social media platform.

In *United States v. Moreira*, 10-cr-002 (ESH), Mr. Moreira used peer-to-peer software to share files with an undercover law enforcement agent. When the defendant was arrested, law enforcement found over 800 images and 5 videos of child pornography, including images of prepubescent children, in the defendant's possession. While Mr. Moreira's Guidelines range was 78 to 97 months, the court sentenced him to 60 months' probation with 60 days incarceration to be served on weekends.

In *United States v. Malakoff*, Cr. No. 09-cr-0051 (ESH), Judge Huvelle sentenced Mr. Malakoff, who had an advisory guidelines range of 78-97 months, to probation.  As with the instant case, *Malakoff* involved both pornographic photos and videos. The court fashioned a probationary sentence, based on other section 3553 factors, such as his lack of any other criminal record, a

childhood sexual trauma, the punishment already inflicted by the conviction and sex offender registration requirement, and Mr. Malakoff's deep roots in the community.

Judge Huvelle expressly addressed the issue of varying so substantially from the Guidelines range of 78-97 months. In addition to the factors noted above that were specific to Mr. Malakoff, the Court noted that:

> [A] review of the case law, including the only relevant cases that I found in this jurisdiction . . . indicates that a significant percentage of cases involve substantial downward variances. Of the five cases that my probation department was able to identify in this jurisdiction where there was no mandatory minimum that controlled the sentence, there were three significant downward variances in three of the five cases. Tr. at 40 (emphasis added).

One reason for the consistent and significant downward variances from the Guidelines is that the Guidelines for the child pornography offenses "do not reflect the sentencing commission's exercise of its character[istic] institutional role. Therefore, they are not entitled to the usual deference." Tr. at 41. Judge Huvelle explained:

> The base offense level was not derived from the sentencing commission's recommendation based upon its singular expertise and study of real sentencing date and national experience, the way the commission determined most other base offense levels. Over time, the level here was substantially increased, not as a result of studies by the expert body Congress created, but was ultimately key[ed] to the increased statutory maximum sentence and the statutory mandatory minimum sentences for the trafficking offenses. Moreover, the enhancement for the volume of images was created by legislation, not crafted or recommended by the commission based upon its careful study in correlation to sentencing goals under 3553. Nor does the guideline assure just punishment in individual cases. The enhancement for using a computer is a undifferentiated application that fails to distinguish the level of culpability for consuming images from that of child pornographers, or from offenders using the computer for commercial profit or mass distribution. The Supreme Court recently in 2009 in a case called [*Spears v. United States*] finally rejected the notion that policy disagreements with guideline cannot provide a basis for sentencing variances. Tr. at 41-42.

Additional cases provide further support for a probationary sentence that would avoid any unwarranted disparity in this matter. *See e.g., United States v. Wright*, 09-cr-311 (ESH),

(probationary sentence of 60 months in possession of child pornography matter after having downloaded about 284 images of child pornography onto his work computer); *United States v. Pakdel*, 1:17-cr-00165-RJL, (time served sentence of three months in case where defendant used peer-to-peer networks to download and distribute 215 videos and 212 images of child pornography); U*nited States v. Autery*, 555 F.3d 864 (9th Cir. 2009) ("sentence of five years' probation upheld for possession of child pornography when Guidelines range was 41-51 months); *United States v. Rowan*, 530 F.3d 379 (5th Cir. 2008) (sentence of five years' probation upheld for possession of child pornography when Guidelines range was 46-57 months); *United States v. Stall*, 581 F.3d 276 (6th Cir. 2009) (sentence of one day imprisonment and ten years' supervised probation upheld for possession of child pornography when Guidelines range was 57-71 months); *United States v. Rausch*, 570 F. Supp. 2d 1295 (D. Colo. 2008) (one-day sentence for possession of child pornography when Guidelines range was 97-120 months).

We have found two recent similar state court cases where judges have imposed probationary sentences. On April 26, 2021, Brandon Lee Walker was sentenced to probation by a Missouri state judge after pleading guilty to possession of child pornography.  Mr. Walker was arrested after federal law enforcement agents were contacted with six reports on user accounts by Dropbox.  All six accounts belonged to Mr. Walker and contained images and videos of child pornography had been uploaded to servers from an IP Address connected to Walker. Forensic analysis of electronic devices revealed that Walker possessed 451 child pornography videos and 2,162 child pornography images.  During his interview with investigators, Walker admitted to downloading/uploading images and videos of children ranging from six to 13 years of age. He was placed on five years of supervised probation.

In June of 2020, John Paul Doerr III was sentenced to five years' probation and six months of home confinement by a Pennsylvania state judge. He pled guilty to 34 counts of possession of child pornography and one count of using a telecommunications device.  One video depicted a child as young as 1-2 years old.

We respectfully submit that, upon consideration of like cases, a probationary sentence would avoid an unwarranted disparity.

D.   *Adequate deterrence to criminal conduct*

The public does not require any further protection from Mr. Chazin nor is there reason to believe he will reoffend. ███████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████. Given the lack of searches for this type of material on his devices, it is unlikely he will be a risk.

To the contrary, Mr. Chazin has done well while on pretrial release.  He moved to South Carolina and was working and living with his girlfriend.  He had no contact with the criminal justice system since his arrest on the Superior Court charges in 2020.  This is significant given the additional stress and anxiety he experienced while awaiting the resolution of this matter.  We submit that Mr. Chazin's post-arrest conduct corroborates Dr. Snably's conclusion that Mr. Chazin is at little to no risk to reoffend.

Although general deterrence remains a required consideration under § 3553(a), there is little evidence to support a finding that harsh sentences deter future criminal conduct.  The unique combination of motivation and circumstance that lead otherwise law abiding citizens to risk

imprisonment are not so easily overcome by the imposition of lengthy sentences.  Although that theory might be appealing on its face, the reality is that that there is little to no difference in the deterrent effect between probation and imprisonment. *See* Francis T. Cullen *et al*., *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 PRISON J. 48S, 50S-51S (2011) (according to "the best available evidence…prisons do not reduce recidivism more than noncustodial sanctions"); *see also* Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006) ("increases in severity of punishments do not yield significant (if any) marginal deterrent effects.").  Indeed, available research suggests that the certainty of being caught and punished carries for greater deterrent effect than the severity of the punishment.  *See id*. ("Three National Academy of Science panels…reached that conclusion, as has every major survey of the evidence."); *see also* David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 CRIMINOLOGY 587 (1995); *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 CARDOZO J. CONFLICT RESOL. 421, 448-49 (2007) ("[T]here is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders.").  For that reason, we submit that lengthening Mr. Chazin's sentence by even one day on a speculative belief that it might somehow, somewhere, someday stop someone unknown to him or to the Court from committing a similar crime, is unfair, unwarranted and given the evidence, unjustified.

  E. *Policy Statements and Considerations*

   This Court should give less weight to the advisory Guideline range because the dramatic 13-level enhancement based simply on the various applicable specific offense characteristics is not supported by empirical evidence.  When a Guideline range is not the product of "empirical

17

data and national experience," courts have the discretion to conclude that the recommended sentence fails to achieve the purposes of federal sentencing under 18 U.S.C. § 3553(a), even in "mine-run" cases. *See Kimbrough v. United States*, 552 U.S. 85, 109-10 (2007); *see also United States v. Nolasco-Ramirez*, 391 F. App'x 309, 311 (4th Cir. 2010) (finding that courts are "free to consider policy decisions behind the Guidelines, including the presence or absence of empirical data…."); *see generally United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010) ("We recognize that in the *post-Booker* sentencing world, district courts must give due consideration to relevant policy statements, but those policy statements are no more binding than any other part of the Guidelines. Accordingly, district courts may 'vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines.'" (quoting *Kimbrough*, 552 U.S. 85 at 101).

The Sentencing Commission,[3] various circuits and district courts have openly, regularly and rightly criticized the role that the Guidelines play in increased incarceration rates through the overly formulaic and unprincipled enhancements that attend to child pornography offenses.[4] As courts and scholars have recognized, the increase in the Guidelines range that derives from the specific offense characteristics in U.S.S.G. § 2G2.2 results in unjustifiable sentencing ranges. As noted in *United States v. D.M.*, 942 F. Supp. 2d 327, 347- 352 (E.D.N.Y. 2013):

---

[3] *See* U.S. Sentencing Commission, Federal Child Pornography Offenses (2013) (*available at* http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf).

[4] Even the Department of Justice has recommended revisions to the child pornography Guidelines to better account for technological advances and to "better distinguish between occasional and habitual offenders." *See* March 5, 2013, Letter from Anne Gannon, National Coordinator for Child Exploitation Prevention and Interdiction of the Department of Justice, at 4 (*available at* http://sentencing.typepad.com/files/doj-letter-to-ussc-on-cp-report.pdf). In particular, DOJ recommended eliminating the 2-level use of computer enhancement entirely, and raising the threshold for quantity of images enhancements. *Id.*

The unreasonable harshness of the Guidelines for an offense of child pornography possession, of which defendant is charged, has been recognized by courts and judges from across the country. *See, e.g., United States v. Pulsifer,* 469 Fed.Appx. 41, 44 (2d Cir.2012) (describing the "unusually harsh impact of the child pornography Guidelines"); *United States v. Stone,* 575 F.3d 83, 97 (1st Cir.2009) (expressing the "view that the sentencing guidelines [for child pornography] are in our judgment harsher than necessary"); *United States v. Henderson,* 649 F.3d 955, 964 (9th Cir.2011) (Berzon, J., concurring) (describing the "unjust and sometimes bizarre results" that follow from application of the child pornography Guidelines)

. . .

At their inception, in 1987, the Guidelines for child pornography covered only the crimes of transporting, receiving, and trafficking offenses. *See C.R.,* 792 F.Supp.2d at 478. Possession of child pornography was not then a federal crime. *Id.* But, as Harvard Law School professor Carol S. Streiker has recognized: [T]he treatment of child pornography has been a one-way ratchet, repeatedly turned by Congress. In a little more than two decades, the child pornography Guidelines were substantively revised nine times, with each revision either extending the scope of the offense or making the penalty harsher. In the span of a single decade (from 1997 to 2007), the mean sentence of child pornography offenders increased from 20.59–months to 91.30–months confinement—an increase of 443%.

. . .

The Court of Appeals for the First, Second, Third and Ninth Circuits—as well as district courts—have expressly recognized what little deference the child pornography Guidelines are owed. *See Dorvee,* 616 F.3d at 188; *Henderson,* 649 F.3d at 960 (holding that "district judges must enjoy the same liberty to depart from [the child pornography guideline] based on reasonable policy disagreement as they do from the crack-cocaine Guidelines discussed in *Kimbrough* ); *United States v. Grober,* 624 F.3d 592, 609 (3d Cir.2010) (affirming district court's decision based on policy disagreement not to apply recommended Guidelines range for child pornography offense); *Stone,* 575 F.3d at 93 (recognizing district court's authority to vary from child pornography Guidelines); *Munoz,* 2012 WL 5351750, at *4 n. 2 (citing cases); *see also United States v. Huffstatler,* 571 F.3d 620, 623 (7th Cir.2009) (per curiam) ("[W]hile district courts perhaps have the freedom to sentence below the child-pornography guidelines based on disagreement with the guidelines, as with the crack guidelines, they are certainly not required to do so.").

. . .

Widespread criticism from the judiciary and others supports the Sentencing Commission's recent proclamation that it "concurs with the many stakeholders who contend that *the sentencing scheme should be revised* to better reflect both technological changes in offense conduct and emerging social science research and also better account for the variations in

offenders' culpability and their sexual dangerousness." Comm'n Rep. on Fed. Child Pornography Offenses 15 (emphasis added). Action must be taken, argues the Commission, to ensure that the Guidelines more rationally "account for recent technological changes in offense conduct and emerging social science research about offenders' behaviors and histories, and also to better promote the purpose of punishment by accounting for the variations in offenders' culpability and sexual dangerousness."

Mr. Chazin's offense is similar to the overwhelming majority of child pornography cases in terms of the applicable enhancements and clearly illustrates the points raised by the court in *D.M.* and the Sentencing Commission. Mr. Chazin is subject to a 2-point enhancement because the material at issue included photographs of minors under the age of twelve. The "United States Sentencing Commission statistics show[] that, in 2009, '94.8% of child pornography sentences involved an image of a prepubescent minor.'" *D.M.*, 942 F. Supp. 2d at 343-44. There is a 5-point enhancement because the offense involved the possession of 600 or more images, and according to the United States Sentencing Commission, 63.1% of offenses implicate this enhancement. *Id.* There is a four point enhancement related to images showing masochistic conduct, which are implicated in 73.4% of cases according to the United States Sentencing Commission. *Id.* There is also a two-point enhancement for the use of a computer, which is an out-of-date enhancement from 1995 which in the modern era is effectively part of the base offense level, given the ubiquity of computers in 2016. *United States v. C.R.*, 792 F. Supp. 2d 343, 512 (E.D.N.Y. 2011) (reversed on other grounds sub nom.).[5]

---

[5] *See also United States v. Reingold*, 731 F.3d 204 (2d Cir. 2013) ("The two-point enhancement for use of a computer is not applied. Virtually all child pornography crimes involve the use of a computer. Adding two points results in double counting and is not sufficiently particularized to the facts of the case. *See Stabenow, supra* at 16 ('In 2006, 97% of the 1,012 child pornography defendants had used a computer. Today, forensic computer technology and monitoring facilitates, not thwarts, the investigation of child pornography offenses. So, if a client today used a computer, but did not widely disseminate the images, did not use them to entice or coerce a child, and did not show them to a child, then their conduct is completely outside the scope

Specific to Mr. Chazin, application of the § 2G2.2 specific offense characteristics increases his Guidelines range by 13 levels.  This Court should not support such a massive increase in Mr. Chazin's Guidelines range when it rests on an unprincipled, unjustified and unexplained foundation, especially when it increases his advisory sentencing.

We respectfully submit that a probationary sentence is more than adequate deterrence for Mr. Chazin.  The stigma associated with this offense is grave and will follow Mr. Chazin for the rest of his life.  Mr. Chazin will have to register as a sex offender for 15 years.   His actions and poor judgment will be something that Mr. Chazin will have to explain at every stage of his young life and career.  It will impact his ability to work, find an apartment and to find a spouse.  These are significant collateral consequences.

We respectfully submit that a probationary sentence and the requirement to register as a sex offender provide adequate protection to the public.  His character letters illustrate that Mr. Chazin is trustworthy and otherwise law abiding. He does not have a sexual interest in minors.  He has learned, the hard way, of the dangers of downloaded vast files of pornographic content from unknown sources.  This prosecution, and the negative consequences associated with it, has served as specifical deterrence.  In these circumstances, the requested sentence is fully consistent with the Court's statutory mandate to impose a sentence that is "sufficient, but not greater than necessary" to serve the purposes of federal sentencing.  We therefore respectfully submit that the appropriate sentence for Mr. Chazin is probation.

---

of the fear that prompted Congress to require the enhancement, and therefore a variance should be considered.'")).

## <u>CONCLUSION</u>

Based on the foregoing reasons and any other that may appear to the Court, Mr. Chazin respectfully submits that a probationary sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

Dated: May 10, 2021                    Respectfully submitted,

/s/ Danny C. Onorato
Danny C. Onorato (DC Bar # 480043)
SCHERTLER ONORATO MEAD & SEARS, LLP
901 New York Avenue NW
Suite 500
Washington, D.C.  20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177

*Counsel for Adam Chazin*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 10, 2021, I caused hard copies of Defendant's Memorandum

in Aid of Sentencing to be served on the government via email to the following address:

Amy Larson
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
amy.larson2@usdoj.gov

Respectfully submitted,

*/s/ Danny C. Onorato*
Danny C. Onorato
SCHERTLER ONORATO MEAD & SEARS, LLP
901 New York Ave., NW
Suite 500 West
Washington, DC 20001
(202) 309-0912 – Tel.
(202) 628-4177 – Fax
donorato@schertlerlaw.com

*Counsel for Adam Chazin*

23