**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

United States of America,        ) Criminal Action
                                 ) No. 1:21-cr-00076-KBJ
                Plaintiff,       )
                                 ) **Plea and Sentencing**
vs.                              ) (via Zoom)
                                 )
Adam Chazin,                     ) Washington, D.C.
                                 ) **May 24, 2021**
                Defendant.       ) Time:  10:00 a.m.
_____

**Transcript of Plea and Sentencing** (via Zoom)
**Held Before**
**The Honorable Ketanji Brown Jackson** (via Zoom)
**United States District Judge**

A P P E A R A N C E S

For the Government:        **Amy E. Larson**
(via Zoom)                 UNITED STATES ATTORNEY'S OFFICE
                           FOR THE DISTRICT OF COLUMBIA
                           555 Fourth Street, Northwest
                           Washington, D.C. 20001

For the Defendant:         **Danny C. Onorato**
(via Zoom)                 SCHERTLER ONORATO MEAD & SEARS, LLP
                           555 13th Street, Northwest
                           Suite 500 West
                           Washington, D.C. 20004

Also Present (via Zoom):
                           Kelli Willett, Probation Officer
_____

Stenographic Official Court Reporter:
(via Zoom)                 Nancy J. Meyer
                           Registered Diplomate Reporter
                           Certified Realtime Reporter
                           333 Constitution Avenue, Northwest
                           Washington, D.C. 20001
                           202-354-3118

1             P R O C E E D I N G S

2          THE COURTROOM DEPUTY:  We are on the record in

3    Criminal Record 21-76, United States of America v. Adam Chazin.

4          Present for the government are Amy Larson and Benjamin

5    Bleiberg.  Present from the United States probation office is

6    Kelli Willett.  Present for the defendant are Danny Onorato and

7    Pao Pinto.  Also present is the defendant, Mr. Chazin.

8          THE COURT:  Good morning to all of you.

9          This is a combined plea and sentencing.  It's my

10   understanding that the purpose of Mr. Chazin's appearance in

11   court today is to enter a plea of guilty and to be sentenced.

12   Mr. Onorato, is that correct?

13          MR. ONORATO:  It is, Your Honor.

14          THE COURT:  All right.  So let us start by having the

15   Court acknowledge that we are proceeding via videoconference

16   technology because the Court is only in Phase 2 of its plan for

17   reopening the courthouse in light of the COVID-19 pandemic.

18   Only very limited proceedings have been authorized for

19   in-person hearings at this point, and the Chief Judge has

20   issued a standing order that allows the Court to use

21   videoconference technology for proceedings such as pleas and

22   sentencings, with the consent of the defendant and when further

23   delay would cause serious harm to the interests of justice.

24          So let me start by confirming with Mr. Chazin, through

25   Mr. Onorato, that he consents to proceed by

1   video-teleconference technology.

2          MR. ONORATO:  He does, Your Honor.

3          THE COURT:  All right.  This Court, therefore, finds

4   that it is in the interest of justice to proceed with today's

5   plea and sentencing hearing via remote technology.  The Court

6   finds that any further delay would result in serious harm to

7   the interests of the defendant and the public.

8       Before we begin, let me also remind everyone that per

9   the Chief Judge's order, any recording or rebroadcasting of

10  today's proceeding is prohibited, and please mute your devices

11  when you're not speaking.

12      Mr. Chazin, I need to explain to you what is going to

13  happen.  This hearing will proceed in two parts.  First, the

14  Court will review with you the terms of your plea agreement to

15  make sure that you understand the rights that you're waiving,

16  and it will give you the opportunity to enter a plea of guilty,

17  if that's what you decide to do.

18      We will then proceed to the sentencing hearing, and the

19  Court will explain each step of that hearing at the beginning

20  of that process.  All right?

21      Before we proceed any further, let me ask the courtroom

22  deputy to administer the oath.

23          THE COURTROOM DEPUTY:  Mr. Chazin, will you please

24  raise your right hand.

25          (Oath administered.)

```
1                THE COURT:  You may be on mute.  Let's see.  Can you
2      try again?
3                THE DEFENDANT:  I do.
4                THE COURT:  Okay.  Terrific.  Thank you.  We can hear
5      you now.
6                THE COURTROOM DEPUTY:  Thank you.
7                THE COURT:  Mr. Chazin, you are now under oath.  I
8      must ask you certain questions to ensure that you understand
9      your rights and to ensure that this plea is knowing and
10     voluntary.  Do you understand that if you do not answer my
11     questions truthfully, you could be prosecuted for perjury or
12     for making a false statement and any false answers that you
13     give here could be used against you in that prosecution?
14               THE DEFENDANT:  I do.
15               THE COURT:  The purpose of this plea hearing this
16     morning is for you to make a decision whether you want to go to
17     trial on the government's charges against you or whether you
18     want to enter a plea of guilty.  In order to make that very
19     important decision, it is crucial that you understand
20     everything that's going on here this morning and everything
21     that I'll be explaining to you.  If you don't understand
22     something, you need to tell me, please, and I will try to
23     explain it in a different fashion, or I'll let you stop and
24     talk to your counsel.
25           I understand you are with counsel, at least certain
```

1    counsel now, and we can put you into breakout rooms if you need

2    to speak to Mr. Onorato.  All right?

3         Okay.  I'm now going to ask you a series of questions,

4    and you will need to answer them truthfully as you agreed to do

5    when you took the oath.

6         What is your full name?

7              THE DEFENDANT:  Adam Michael Chazin.

8              THE COURT:  And how old are you?

9              THE DEFENDANT:  I'm 25.

10             THE COURT:  Twenty-five?

11             THE DEFENDANT:  Correct.  Twenty-five.

12             THE COURT:  How far did you go in school?

13             THE DEFENDANT:  I have a --

14             THE COURT:  We have some video/audio issues that is

15   causing you to sort of cut in and out a little bit when you

16   talk.  So that sometimes happens with Zoom, I've noticed.  Let

17   me see if -- I wonder what we can do.  Maybe if you can try to

18   speak a little bit slower it will pick up, Mr. Chazin.  Let's

19   try that; all right?

20        So I'm going to ask you again, how far did you go in

21   school?

22             THE DEFENDANT:  I have a couple years of college.

23             THE COURT:  And can you read and write?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Where were you born?

1            THE DEFENDANT:  Maryland.

2            THE COURT:  Yeah, we have audio issues.

3            MR. ONORATO:  Your Honor, what I might do -- I'm in

4    my office, and I might just have Mr. Chazin come into my office

5    and then just point the laptop at him so you can see him, but

6    we'll use my speaker together, if that's okay.

7            THE COURT:  Yes, let's do that.  Thank you.

8            MR. ONORATO:  Yep.

9            (Recess taken.)

10            THE COURT:  Let me go back to:  Where were you born?

11            THE DEFENDANT:  I was born in Rockville, Maryland.

12            THE COURT:  In the last 48 hours, have you taken any

13    alcohol or drugs or any medicine that could affect your ability

14    to understand what you are doing by pleading guilty?

15            THE DEFENDANT:  No, Your Honor.

16            THE COURT:  Are you currently undergoing any

17    treatment for any kind of mental illness or emotional

18    disturbance or addiction to narcotic drugs of any kind?

19            THE DEFENDANT:  No, Your Honor.

20            THE COURT:  Are you completely satisfied with the

21    services of your lawyer in this case?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  And have you had enough time to talk with

24    your attorney and to discuss the charges and this plea offer

25    and whether or not you should accept it?

1       THE DEFENDANT:  Yes, Your Honor.

2       THE COURT:  Have you received a copy of the criminal

3   information pending against you?  Those are the written charges

4   that the government has brought against you in this case.  Have

5   you seen that information?

6       THE DEFENDANT:  Yes, Your Honor.

7       THE COURT:  And have you read the charges and

8   discussed them fully with your counsel?

9       THE DEFENDANT:  Yes, Your Honor.

10      THE COURT:  Let me ask counsel for both the

11  government and the defense if you have any question about this

12  defendant's competence to plead guilty at this time.

13      Mr. Onorato?

14      MR. ONORATO:  No, Your Honor.

15      THE COURT:  Ms. Larson?

16      MS. LARSON:  No, Judge.

17      THE COURT:  Okay.  Based on the answers that have

18  been provided here, I find that the defendant is fully

19  competent and capable of entering an informed plea.

20      Now, I want to get this right.  Is it Chazin or Chazin.

21      THE DEFENDANT:  It's Chazin.

22      THE COURT:  Chazin.  Thank you.

23      Mr. Chazin, I need to explain to you certain rights that

24  you have with respect to this matter, and I need to find out

25  whether or not you understand those rights.  Please listen

1    carefully to my questions and be sure to let me know if there

2    is something that you do not understand.  And, again, if you

3    need to talk to your counsel, we can stop.  All right?

4         Under the terms of your plea agreement, you will plead

5    guilty to an information that charges you with three counts,

6    one count -- the first count is of possession of child

7    pornography in violation of 18 U.S.C. § 2252 (a)(4)(B) and

8    (b)(2).  The second count is possession of an unregistered

9    firearm in violation of 7 D.C. Code § 2502.01(a).  And the

10   third count is attempted possession of a large capacity -- a

11   large capacity ammunition feeding device in violation of 22 --

12   22 D.C. Code § 1803 and 70 D.C. Code 2506.01(b).

13        Again, these charges have been brought against you by

14   information.  Do you understand that you have the right to a

15   grand jury indictment?  In other words, you've been charged

16   with a felony in the federal count, and the government

17   ordinarily would have to convince 12 grand jurors that there is

18   probable cause that this crime was committed and that you

19   committed it before the government could proceed with this

20   case.  Do you understand that you have the right to a grand

21   jury indictment?

22             THE DEFENDANT:  I understand, Your Honor.

23             THE COURT:  And do you give up that right?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  I do have a waiver of indictment form

1    that you have signed and that your counsel has signed based on

2    the representation that you are waiving the right to

3    indictment.  I will sign the document as well.

4         Mr. Chazin, before you plead guilty, you need to know

5    that you have the right to plead not guilty and to have a jury

6    trial in this case.  That means that 12 citizens of the

7    District of Columbia would come into the courtroom and sit in

8    the jury box, review evidence, and determine your guilt or

9    innocence based upon that evidence.  Do you understand that you

10   have the right to a jury trial?

11        THE DEFENDANT:  I do, Your Honor.

12        THE COURT:  If you had a trial, you would have a

13   right to be represented by your lawyer at that trial and at

14   every other stage of these criminal proceedings, and, if

15   necessary, you would have the right to have the Court appoint

16   counsel for you at no cost to you.  Do you understand those

17   rights?

18        THE DEFENDANT:  I understand, Your Honor.

19        THE COURT:  If you had a trial, you would have a

20   right through your lawyer to confront and cross-examine any

21   witnesses against you.  Do you understand that?

22        THE DEFENDANT:  I understand, Your Honor.

23        THE COURT:  If you had a trial, you would have a

24   right to present your own witnesses and the right to subpoena

25   them, to require them to testify in your defense.  You would

1    also have the right to testify and to present evidence on your

2    own behalf if you wanted to.  Do you understand that?

3              THE DEFENDANT:  I understand, Your Honor.

4              THE COURT:  Do you also understand that you would not

5    have to testify or present any evidence at trial if you did not

6    want to because the defense cannot be forced to present

7    evidence in a criminal case, and the fact that you chose not to

8    testify or present evidence could not be used against you?  Do

9    you understand that?

10             THE DEFENDANT:  I understand, Your Honor.

11             THE COURT:  Do you also understand that unless and

12   until I accept your guilty plea, you are presumed by the law to

13   be innocent because it is the government's burden to prove your

14   guilt beyond a reasonable doubt?  And until it does, you cannot

15   be convicted.  Do you understand that?

16             THE DEFENDANT:  I understand, Your Honor.

17             THE COURT:  Do you understand if you plead guilty in

18   this case and if I accept your guilty plea, you will give up

19   all of the rights that I just explained to you, all the

20   trial-related rights, and there will be no trial?

21             THE DEFENDANT:  I understand, Your Honor.

22             THE COURT:  Do you understand if you went to trial

23   and you're convicted, you would have a right to appeal your

24   conviction to the Court of Appeals and the right to have a

25   lawyer help you prepare that appeal?

1        THE DEFENDANT:  I understand, Your Honor.

2        THE COURT:  Do you understand that by pleading guilty

3    you are generally giving up your right to appeal your

4    conviction of guilt in this case except for the right to appeal

5    on the basis of ineffective assistance of counsel?

6        THE DEFENDANT:  I understand, Your Honor.

7        THE COURT:  Do you also understand that by pleading

8    guilty, you are giving up your right to appeal the sentence you

9    receive except under the limited circumstances outlined in your

10   plea agreement?  Your plea agreement expressly reserves for you

11   the right to appeal the sentence despite your guilty plea to

12   the extent that the Court sentences you above the statutory

13   maximum or guidelines range, or if you claim ineffective

14   assistance of counsel, but that's it.  You would only have the

15   right to appeal the sentence in those two circumstances, and

16   you cannot raise other issues regarding the sentence because

17   you're agreeing not to do so in the plea agreement.  Do you

18   understand this?

19       THE DEFENDANT:  I understand, Your Honor.

20       THE COURT:  Do you understand that by pleading guilty

21   you are giving up certain procedural challenges related to your

22   conviction?  These are challenges that you might otherwise have

23   been able to make down the line in other subsequent

24   proceedings, if something happens to your conviction or your

25   guilty plea was withdrawn.

1          So, for example, in the plea agreement, you specifically

2    give up your ability to challenge venue, which is the place

3    that the government has chosen to bring these charges against

4    you, which is the District of Columbia.  You give up your

5    ability to raise the defense of the statute of limitations if

6    your conviction were vacated and the government sought to

7    prosecute you again at a later date.  You also give up the

8    protection against self-incrimination and any limitations on

9    the government's use of statements that you may have made

10   during plea negotiations.

11          I want you to understand that by pleading guilty to this

12   plea agreement, you are giving up your right to raise these

13   kinds of defenses and issues later on if something should

14   happen to your plea or conviction.  Do you understand this?

15          THE DEFENDANT:  I understand, Your Honor.

16          THE COURT:  Ordinarily defendants who wish to

17   challenge their conviction and sentence can file an appeal.

18   They can make arguments about defects in the prosecution or

19   sentence until the case has reached the end of the appeals

20   process.  A defendant's conviction and sentence is considered

21   final when it has been fully appealed.

22          There are also certain kinds of challenges that a

23   defendant can bring after his conviction or sentence have

24   become final.  These are called collateral attacks on a final

25   conviction or sentence, and they include something called a

1    habeas petition.  Under this plea agreement, you are waiving

2    your right to bring collateral attacks on your conviction and

3    sentence once they've become final.  Do you understand that

4    you're giving up your right to file a habeas petition later on

5    or bring any other collateral attack against your conviction or

6    sentence except in certain circumstances listed in the

7    agreement?

8         In your agreement, you would have the right to bring a

9    petition or motion in three circumstances:  if the motion is

10   based on newly discovered evidence, if you claim you received

11   ineffective assistance of counsel, or if there's a change in

12   the sentencing guidelines range that is made subsequently and

13   you bring a certain motion concerning that; but those are the

14   only circumstances in which you can file a petition or

15   collateral attack motion.  Do you understand this?

16        THE DEFENDANT:  I understand, Your Honor.

17        THE COURT:  Do you also understand that by pleading

18   guilty to a felony offense, you may later be deprived of

19   valuable civil rights, such as the right to vote, the right to

20   hold public office, the right to serve on a jury, and the right

21   to possess any kind of firearm?

22        THE DEFENDANT:  I understand, Your Honor.

23        THE COURT:  Do you also understand that by pleading

24   guilty to a sex offense and to gun offenses, you might be

25   required by state and federal law to register in the

1  jurisdiction in which you reside or work even after you've

2  served your sentence for those offenses?  Do you understand

3  that?

4             THE DEFENDANT:  I understand, Your Honor.

5             THE COURT:  All right.  Having discussed these rights

6  with you, Mr. Chazin, do you still want to continue on the path

7  toward pleading guilty today, which would result in your giving

8  up the right to a trial and all of the rights that I explained

9  that you would have if your case went to trial?

10            THE DEFENDANT:  Yes, Your Honor.

11            THE COURT:  All right.  We will proceed.

12        Let me turn to Ms. Larson to ask about -- I was going --

13  I'm going to ask you a specific question about plea

14  negotiations in a moment, but, first, can you please state and

15  describe the elements of the charges to which Mr. Chazin will

16  be pleading guilty?

17            MS. LARSON:  Yes, Your Honor.  Count 1 is the

18  possession of child pornography, which alleges that on

19  February 10th of 2020 this defendant possessed one or more

20  visual depictions -- that is, images and videos -- that depict

21  minors engage in sexually explicit conduct, that had been

22  transported or shipped using any means or instrumentalities of

23  interstate or foreign commerce.  The government alleges that

24  that is by the internet and computer.

25        If the Court will give me one second, I will read the

1    elements of the weapons possession charge.  Count 2, this is

2    the possession of an unregistered firearm which, again, on the

3    same date, February 10th of 2020 in the District of Columbia,

4    the defendant did possess a certain firearm.  The government

5    has alleged in the statement of offense that it is an AR, I

6    believe, 556, without being a holder of a valid registration

7    certificate; meaning, that he did not lawfully register that

8    firearm in the District of Columbia.

9         Count 3, again, on the same date of February 10th, 2020,

10   in the District of Columbia, the defendant did attempt to

11   possess in this case a large capacity ammunition feeding

12   device.  As we've alleged in our statement of offense, this

13   defendant was in possession of at least eight magazines, each

14   which possessed a requisite number of ammunition, as well as, I

15   believe, three magazines which were for a Glock pistol.

16        THE COURT:  All right.  Mr. Chazin, that was the

17   description of the charges.  Do you understand the charges

18   against you in this case as the prosecutor just described them?

19        THE DEFENDANT:  I understand, Your Honor.

20        THE COURT:  Ms. Larson, let me just quickly touch on

21   this plea agreement.  I'm trying to assess whether there have

22   been any prior offers that Mr. Chazin should have received and

23   reviewed.  So does this particular plea agreement reflect the

24   only formal plea offer made to the defendant in this case?

25        MS. LARSON:  Yes, Your Honor.

1          THE COURT:  All right.  Mr. Chazin, have you seen a

2     copy of the current plea agreement?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And have you read it carefully and do you

5     understand it?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  And have you had enough time to talk with

8     your lawyer about it?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  As part of the plea agreement, your

11     lawyer and the government have given me another document called

12     the statement of offense, and it describes what the government

13     would be prepared to prove at trial about your criminal

14     conduct.  Have you read this document and discussed it fully

15     with your lawyer?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  Does the statement of offense truly and

18     accurately describe what you did in this case?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Did you, in fact, possess images

21     depicting child pornography in your Dropbox account and iPhone,

22     and possess a firearm that was not registered in the District

23     of Columbia, as well as high capacity magazines?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  All right.  Let me ask Mr. Onorato to

1    briefly summarize the terms of the plea agreement.

2              MR. ONORATO:  Your Honor, the -- the plea agreement

3    is if Mr. Chazin pleads guilty to the one count of possession

4    and the two Superior Court misdemeanor charges, the government

5    will not try to prosecute him for additional charges related to

6    the offense at issue.  In addition, the government has agreed

7    not to bring any charges against Mr. Chazin for when he was

8    stationed in the military in Texas, I think, where some of

9    these items may have been accessed from the Dropbox account.

10             Your Honor, the -- as the Court knows, the guidelines

11   have been calculated.  Mr. Chazin will receive a 3-level

12   acceptance of responsibility reduction, but beyond that

13   Your Honor, there -- there are no other formal agreements with

14   the government.

15             THE COURT:  All right.  And the government covers all

16   of the waivers -- I'm sorry -- not the government.  The plea

17   agreement covers all of the waivers that I've gone over

18   with respect to Mr. Chazin; correct?

19             MR. ONORATO:  It does.

20             THE COURT:  And you have discussed those with him as

21   well?

22             MR. ONORATO:  Yes, Your Honor.  And I think we've

23   also executed a waiver of trial by jury form, but I don't know

24   if the Court inquired about it.  I know you did with respect to

25   the waiver of information, but we --

 1          THE COURT:  Yes, I have that as well.  And I usually

 2     address that at the end, but I just wanted to make sure that

 3     everything that I went over with him, you have also discussed

 4     with him and the context of the plea agreement.

 5          MR. ONORATO:  We have, Your Honor.  Thank you.

 6          THE COURT:  Mr. Chazin, are you also aware of the

 7     provision in the plea agreement -- well, first, what we

 8     discussed, what I just discussed with Mr. Onorato, is that what

 9     you are agreeing to?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And are you also aware of the provision

12     concerning forfeiture, which I believe is Section 13 of the

13     agreement?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And in that paragraph, you are agreeing

16     to forfeit various items:  an Apple iPhone 8; a Samsung flip

17     phone; a Nokia cell phone; an Apple MacBook Air laptop; a

18     fifth-general iPad (Apple); an Apple iPhone SE; a Western

19     Digital 2,000-gigabyte external hard drive; a Ruger AR-556

20     firearm; 8 large capacity magazines; three Glock pistols; 111

21     rounds of 5.56-ball ammunition; and 51 rounds of 9mm

22     ammunition.

23          Are you aware that all of those items will be forfeited

24     to the government and not given to you?

25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  You appear to be frozen, Mr. Chazin.

2     Let's see.

3          MR. ONORATO:  The screen froze.

4          THE COURT:  Okay.  I can hear him, but he's not

5     moving.  Do you want to -- yeah.  Let's see if we can reboot.

6          MR. ONORATO:  I think the computer just locked after

7     being idle for a few minutes.

8          THE COURT:  Got it.

9          All right.  The Court accepts this plea agreement is of

10    the type that is authorized by Rule 11 of the Federal Rules of

11    Criminal Procedure in that it specifies that the government

12    will not bring other charges and that the government will

13    recommend a 2-level reduction for acceptance of responsibility

14    and a 1-level reduction for timeliness of your intention to

15    plead guilty.

16         Mr. Chazin, have you and your lawyer talked about the

17    sentencing and how the statutes and sentencing guidelines might

18    apply in your case?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  Do you understand that if I accept your

21    guilty plea in this case, you could receive a maximum sentence

22    of 20 years of imprisonment on Count 1, 1 year of imprisonment

23    on Count 2, and 180 days of imprisonment on Count 3?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  This case involves more than a single

1    count.  Are you aware that the sentence for each of the

2    three counts could be ordered to run consecutively?

3                 THE DEFENDANT:  Yes, Your Honor.

4                 THE COURT:  Do you understand that following any term

5    of imprisonment that is imposed for this offense, you must be

6    subject to a period of supervised release by law?

7                 THE DEFENDANT:  Yes.

8                 THE COURT:  That means if you are sent to prison,

9    then upon your release, you would be under the supervision of

10   the probation office and expected to follow certain conditions

11   and rules with which you must comply.  If you violate any of

12   those conditions, you could be sent back to prison for an

13   additional period of time.  Do you understand the concept of

14   supervised release?

15                 THE DEFENDANT:  Yes, Your Honor.

16                 THE COURT:  He's frozen again.

17                 MR. ONORATO:  We're -- we're -- we've got technical

18   support here.

19                 THE COURT:  All right.

20                 MR. ONORATO:  All right.

21                 THE COURT:  By law, there are minimum and maximum

22   terms of supervised release.  By statute, there -- the minimum

23   term is five years.  The maximum term is life.

24        There are also fine provisions in the law.  No mandatory

25   fine, but there are maximums:  $250,000 for Count 1; $2500 for

1    Count 2; and $1,000 for Count 3.  Mr. Chazin, do you understand

2    you will have to pay a special assessment of $100 for Count 1,

3    which is in a federal statute, a hundred dollars for each

4    federal count, to the Clerk of the U.S. District Court?  Do you

5    understand that?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  There are also other special assessments

8    that are required by law and that I'm actually hoping to talk

9    to your counsel and the government about, but are you aware

10   that federal law at least prescribes for nonindigent defendants

11   who are convicted of an offense under Chapter 110 of Title 18,

12   which relates to sexual exploitation and abuse of children,

13   that the defendant pay an additional $5,000 per count, again,

14   unless the person is found to be indigent at the time of

15   sentencing?  Did you know that?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  There's also the possibility of an

18   assessment up to an additional $17,000 under Title 18 § 2259(a)

19   for persons convicted of certain offenses.  Are you aware of

20   that potential assessment as well?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  It also appears that a special assessment

23   might well be required for D.C. Code offenses under

24   4 D.C. Code 516(a), an offender to be required to pay between

25   50 and 250 dollars for serious traffic or misdemeanor offenses?

1   And there are two such misdemeanor offenses being charged here.

2        Let me ask Mr. Onorato, the special assessments aren't

3   really mentioned in the plea agreement, especially for the

4   D.C. offenses, although they're discussed in the presentence

5   report.  So have you discussed these with your client?  Have

6   you negotiated with the government concerning them?  What am I

7   to make of the special assessment?

8        MR. ONORATO:  Your Honor, we've not negotiated with

9   the government, but we are aware that there are special

10  assessments the Court, you know, will impose under both the

11  federal law and the D.C. law.

12       THE COURT:  Okay.  All right.  Mr. Chazin, we've

13  talked about forfeiture.  Do you understand you'll have to

14  forfeit -- do you also understand that as part of your

15  sentence, the Court can order you to pay restitution to any

16  victims of the offense?

17       THE DEFENDANT:  Yes, Your Honor.

18       THE COURT:  Do you understand that the Court has an

19  obligation to determine mandatory restitution and whether or

20  not it applies and, if so, what the amount is?

21       THE DEFENDANT:  Yes, Your Honor.

22       THE COURT:  Mr. Onorato, the plea agreement does not

23  discuss the particular amount of restitution, although the

24  government has now submitted several victim statements.  Some

25  of those statements request particular amounts.  Have you

1  discussed this?  Have you come to some agreement in terms of

2  the restitution?

3           MR. ONORATO:  There is no agreement with the

4  government, Your Honor.  Mr. Chazin is aware that the

5  government is seeking restitution.  He's also aware that the

6  Court has an obligation to impose a mandatory restitution

7  assessment of $3,000 per victim.

8           THE COURT:  Okay.  All right.  Mr. Chazin, do you

9  understand that under the plea agreement, in order to

10 facilitate the collection of any financial obligations or

11 restitution, you will authorize to the United States Attorney's

12 Office the ability to obtain a credit report, to evaluate your

13 ability to meet any financial obligations, and you have to

14 certify that you've made no transfer of assets nor will you

15 make any such transfer in the future until any financial

16 obligation under this agreement have been satisfied in full?

17 Do you understand that there are these requirements in the plea

18 agreement that facilitate your ability to pay?

19           THE DEFENDANT:  I understand, Your Honor.

20           THE COURT:  Are you also aware that, similarly, you

21 are agreeing to provide certain information to the government,

22 including a completed financial statement or disclosure form,

23 and that any willful falsehood in those statements could be the

24 basis for a separate prosecution?  Do you understand that?

25           THE DEFENDANT:  I understand, Your Honor.

1          THE COURT:  In determining your sentence with respect

2     to the federal count, the Court is obligated to calculate and

3     consider the applicable sentencing range recommended in the

4     federal sentencing guidelines for your offense and for a person

5     with your criminal history.  Imposing a sentence in accordance

6     with the *Guidelines Manual* is no longer mandatory on federal

7     courts, but the federal guidelines must be calculated and

8     considered in every federal criminal case.

9          When determining your sentence with respect to Counts 2

10    and 3, which are D.C. crimes, the *Voluntary Sentencing*

11    *Guidelines* of D.C. do not apply because both of those crimes

12    are misdemeanors.  So, basically, we only have one sentencing

13    guideline calculation to do.  Have you and your attorney talked

14    about the federal sentencing guidelines and how they might

15    apply in this case?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  All right.  We have him coming back.

18          MR. ONORATO:  I just switched, basically, with --

19          THE COURT:  Yes.  Mr. Chazin, the government and your

20    attorney have stated in the plea agreement what they estimate

21    your guideline range to be for Count 1 under the federal

22    sentencing guidelines.  Have you discussed those estimations

23    with your attorney?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  And do you understand that the Court's

1    guidelines calculation may lead to a sentencing range that is

2    different from the estimates that have been made by the

3    government and your attorney?

4              THE DEFENDANT:  Yes, Your Honor.

5              THE COURT:  Do you also understand that even after

6    the Court has calculated the guidelines and decided what the

7    advisory guideline range is, the Court will determine what the

8    sentence is going to be and it has the authority to impose a

9    sentence that is more severe or less severe than the sentence

10   imposed by the guidelines -- or recommended by the guidelines?

11   Do you understand that?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  Do you understand that you cannot

14   withdraw your guilty plea after sentencing simply because you

15   don't like or disagree with the sentence that is ultimately

16   imposed in your case?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  All right.  We're going to pause for a

19   second.

20             (Recess taken.)

21             THE COURT:  Are we back?

22             MR. ONORATO:  We're back.

23             THE COURT:  Mr. Chazin, in determining the sentence

24   imposed, the Court has to consider factors that are in addition

25   to the guidelines.  The Court is not only obligated to

1    calculate the guidelines, but Congress has also laid out in a

2    statute that is found at Title 18 of the United States

3    Code § 3553(a) that judges have to consider such matters as the

4    nature and circumstances of the offense, the history and

5    characteristics of the defendant, the need for the sentence

6    imposed to reflect the seriousness of the offense, to promote

7    respect for the law, to provide just punishment for the

8    offense, to afford deterrence, protecting the public,

9    et cetera, providing rehabilitation.

10          Do you understand that the Court can and must consider

11   all of the relevant factors when it selects a sentence?

12               THE DEFENDANT:  Yes, Your Honor.

13               THE COURT:  You understand that under some

14   circumstances, the government may have the right to appeal any

15   sentence that the Court imposes if the government does not like

16   that sentence?

17               THE DEFENDANT:  Yes, Your Honor.

18               THE COURT:  Do you understand that parole has been

19   abolished for federal charges so that if you are sentenced to

20   prison, then you would serve the sentence the Court imposes

21   with a possible reduction for good time, but you would not be

22   released early on parole as used to be the case?  Do you

23   understand that?

24               THE DEFENDANT:  Yes, Your Honor.

25               THE COURT:  I'm going to repeat one question that is

1   very important.  Do you understand that if this sentence ends

2   up being more severe than you expect, you will still be bound

3   by your guilty plea and will have no right to withdraw it?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  All right.  Mr. Chazin, the last set of

6   questions that I have in the plea agreement phase of this

7   proceeding have to do with the voluntariness of this plea.  Has

8   anyone forced, threatened, or coerced you in any way into

9   entering this plea of guilty?

10            THE DEFENDANT:  No, Your Honor.

11            THE COURT:  Has anyone, including your attorney, the

12   police, the prosecutor, or any other person you've come into

13   contact with since your arrest, promised or suggested to you

14   that merely because you are pleading guilty I will give you a

15   lighter sentence?

16            THE DEFENDANT:  No, Your Honor.

17            THE COURT:  Do you understand that the agreement

18   reached in this case resulted from negotiations between your

19   attorney and the government's attorney?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  Has anyone made any promises to you in

22   connection with your guilty plea other than those contained in

23   the plea letter or stated in open court here?

24            THE DEFENDANT:  No, Your Honor.

25            THE COURT:  Other than what is stated in the plea

1    agreement letter, has anyone made any promises to you as to

2    what sentence the Court might impose if it accepts your guilty

3    plea?

4            THE DEFENDANT:  No, Your Honor.

5            THE COURT:  Are you entering this plea of guilty

6    voluntarily and of your own free will because you are guilty

7    and for no other reason?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Is there anything that you do not

10   understand about this proceeding or about your plea in this

11   case?

12           THE DEFENDANT:  No, Your Honor.

13           THE COURT:  Is there anything you want to ask me or

14   your lawyer before you enter your plea?

15           THE DEFENDANT:  No, Your Honor.

16           THE COURT:  Are you now ready to say whether you want

17   to plead guilty or go to trial on the charges in this case?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  What do you want to do, Mr. Chazin?

20           THE DEFENDANT:  I would like to enter a plea of

21   guilty, Your Honor.

22           THE COURT:  And you're pleading guilty because you

23   are guilty, sir?

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  I am satisfied that this defendant is

1    fully capable and competent; that he is able to make a decision

2    today; that he is -- understands the nature of the charges and

3    the consequences of this plea; that the plea of guilty is

4    knowing and voluntary; that he's acting of his own free will in

5    pleading guilty; and that there is an adequate factual basis

6    for each of the essential elements of the offenses in support

7    of this plea.

8            Therefore, the guilty plea is entered, and the defendant

9    is now adjudged guilty of the charged offenses.

10           I have the waiver of trial by jury form which the

11   defendant, defense counsel, and Assistant United States

12   Attorney have signed.  The Court will now sign it as well.

13           All right.  Let me just double-check with Ms. Larson

14   that I don't need to make any findings concerning forfeiture

15   under these circumstances.  I know the plea agreement covers

16   it, and I just didn't know whether there needed to be a consent

17   order with respect to forfeiture or some other kind of finding

18   made by the Court.

19               MS. LARSON:  No, Judge, not at this time.

20               THE COURT:  All right.  So I have accepted the guilty

21   plea regarding one count of possession of child pornography in

22   violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2); one count of

23   possession of an unregistered firearm in violation of

24   7 D.C. Code § 2502.01(a); and one count of attempted possession

25   of a large capacity ammunition feeding device in violation of

1    22 D.C. Code § 1803 and 7 D.C. Code § 2506.01(b).  Having done

2    so, the Court will now move on to sentencing.

3           I have received and reviewed various documents submitted

4    by counsel and the probation office in advance of the

5    sentencing portion of this hearing.  I have the presentence

6    report and sentencing recommendation.  I have the government's

7    sentencing memorandum and reply, including exhibits; the

8    defendant's sentencing memoranda, including exhibits; victim

9    impact statements submitted by the government; restitution

10   requests submitted by the government.

11          It appears that the parties have engaged in the process

12   of reviewing and revising the presentence report and that the

13   final report is complete.

14          Mr. Chazin, this sentencing portion will essentially

15   proceed in three steps.  The first step is for the Court to

16   determine what sentencing guidelines and sentencing range

17   applies to your case, and I do this by looking at the

18   sentencing *Guidelines Manual*, determining what various

19   enhancements apply to your conduct under the manual; and

20   looking at your criminal history, deciding whether there are

21   any mitigating or aggravating factors that might warrant a

22   departure under the sentencing *Guidelines Manual*.

23          The next step is to hear from the government, from any

24   victims, from your counsel, and from you, if you wish to be

25   heard, about the sentence in this case.

1     And the last step requires the Court to fashion a

2  sentence.  And I do this in light of the factors set forward in

3  the statute, 18 U.S.C. § 3553(a).  As part of this last step,

4  the Court will actually impose the sentence, along with any

5  other required consequences for your federal offense.

6     I speak to defendants and explain what's going to happen

7  in these proceedings primarily because I realize that it's

8  sometimes hard for nonlawyers to follow all of the mechanical

9  procedures that we need to undertake in order to conduct a

10  sentencing.

11     But I think the most important thing for your purposes

12  is for you to keep in mind why we're here at this moment and

13  the gravity of the situation.  You have committed and have pled

14  guilty to conduct that constitutes a federal crime and local

15  crime.  Today's proceeding is a serious matter because it is

16  fundamentally about the consequences that you will need to face

17  as a result of your decision to engage in criminal behavior in

18  violation of the law.

19     All right.  So beginning with the presentence report --

20  excuse me for a second.  Let me grab my sentencing *Guidelines*

21  *Manual*.  The final presentence report in this case was filed on

22  May 17th of 2021.  The probation office's sentencing

23  recommendation was filed on that same day.

24     Let me start by asking the government if you have any

25  objections to any of the factual determinations that are set

1    forward in the presentence report?

2              MS. LARSON:  No, Your Honor.

3              THE COURT:  All right.  Before I ask the same of the

4    defense, Mr. Chazin, are you fully satisfied with your attorney

5    in this case?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  And do you feel that you've had enough

8    time to talk with your counsel about the presentence report and

9    the papers filed by the government in connection with this

10   sentencing?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Mr. Onorato, have you and your client

13   read and discussed the presentence report?

14             MR. ONORATO:  Yes, Your Honor.

15             THE COURT:  Are there any disputed issues of fact in

16   that report?

17             MR. ONORATO:  No, Your Honor.

18             THE COURT:  All right.  Hearing no objection, the

19   Court will accept the factual recitation in the presentence

20   report regarding the circumstances of the offense and this

21   defendant's history and characteristics, and, therefore, the

22   facts as stated in the presentence report will be the Court's

23   findings of fact for the purpose of this sentencing.

24             In addition to the facts, the presentence report lays

25   out the probation office's calculation of the advisory

1    guideline range that applies in this case with respect to

2    Count 1, which is the federal charge, as I mentioned earlier.

3    The presentence report also notes that the D.C. *Voluntary*

4    *Sentencing Guidelines* do not apply to Counts 2 and 3 because

5    those charges are misdemeanors.

6         The federal guideline calculation for Count 1 was done

7    using the 2018 *Guidelines Manual*, and it is as follows:

8    Beginning with the guideline offense level, the applicable

9    guideline in this case based on the charged federal offense is

10   2G2.2(a)(1), which has a base level of -- base offense level of

11   18 under the circumstances presented here.

12        According to the presentence report, four specific

13   offense characteristics apply:  a 2-level increase under

14   2G2.2(b)(2) because the material involved a prepubescent minor

15   under the age of 12 years; a 4-level increase under 2G2.2(b)(4)

16   because the offense involved material portraying sadistic or

17   masochistic conduct and the sexual abuse/exploitation of an

18   infant or toddler; a 2-level increase under 2G2.2(b)(6) because

19   the offense involved the use of a computer or an interactive

20   computer service for the possession, transmission, receipt, or

21   distribution of the material, or for accessing with intent to

22   view the material; and a 5-level increase under section

23   2G2.2(b)(7)(D) because the offense involved over 600 images of

24   child pornography.

25        The government has also represented that Mr. Chazin has

1    demonstrated acceptance of responsibility in a manner that

2    entitles him to a 2-level reduction under 3E1.1(a) and that he

3    timely notified the government of his intention to plead guilty

4    in manner that entitles him to an additional 1-level reduction

5    under 3E1.1(b).

6         Now, when we get to the discussions of variances, the

7    Court will discuss its standard policy disagreements with

8    certain of these guideline enhancement provisions, but prior to

9    the consideration of any departures or variances, the Court

10   finds that Mr. Chazin's total offense level is 28.

11        Let me ask at this point if there are any objections to

12   that calculation of the offense level.

13             MR. ONORATO:  No, Your Honor.

14             MS. LARSON:  Not from -- no, Your Honor.

15             THE COURT:  Okay.  Turning to the applicable criminal

16   history category, the presentence investigation has found that

17   Mr. Chazin has no prior convictions that receive criminal

18   history points in the *Guidelines Manual* and that he has,

19   therefore, 0 criminal history points.  That puts Mr. Chazin in

20   Criminal History Category I.  Are there any objections to this

21   criminal history calculation?

22        Mr. Onorato?

23             MR. ONORATO:  No, Your Honor.

24             THE COURT:  Ms. Larson?

25             MS. LARSON:  No, Judge.

 1          THE COURT:  So given a criminal history category of I

 2    and an adjusted offense level of 28, the applicable sentencing

 3    range in this case under the guidelines is 78 to 97 months of

 4    imprisonment for Count 1.  Are there any objections to the

 5    guideline range calculation?

 6          Mr. Onorato?

 7          MR. ONORATO:  No, Your Honor.

 8          THE COURT:  Ms. Larson?

 9          MS. LARSON:  No, Judge.

10          THE COURT:  Okay.  Having determined the applicable

11    guideline range, the next step is for the Court to consider

12    departures.  The presentence report does not include any

13    departure grounds.  Neither party appears to have mentioned

14    any, perhaps because of the plea agreement, but the parties

15    have made arguments that the Court should vary from the

16    guideline range, and I'll discuss those later.  But at this

17    point, as I calculate the applicable guideline range, is there

18    any bases for a departure as distinguished -- as distinguished

19    from a variance that the parties would like to assert?

20          Mr. Onorato?

21          MR. ONORATO:  No, Your Honor.

22          THE COURT:  Ms. Larson?

23          MS. LARSON:  No, Judge.

24          THE COURT:  Okay.  So at this point in my

25    sentencings, I typically discuss the range of imprisonment

1   under the statutes and guidelines that are applicable to the

2   offenses at issue.  This is because section 3553 requires the

3   Court to consider a variety of factors, and those factors

4   include the applicable penal statutes.

5       So let me take a moment to describe the applicable

6   statutory and guideline penalties for this offense; the federal

7   offense, and the misdemeanor offenses.  As I advised Mr. Chazin

8   earlier, the charge of distribution of child pornography in

9   violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) is a federal

10  offense that carries a statutory maximum penalty of 20 years of

11  imprisonment.  Because of the charges in this case, as stated

12  in the information, there is no mandatory minimum.  Probation

13  is permitted under the applicable statistics, but because

14  Mr. Chazin's guideline range falls within Zone D of the

15  sentencing table, a sentence of probation would constitute a

16  variance from the guidelines.

17      The charge of possession of an unregistered firearm in

18  violation of 7 U.S.C. [sic] § 25- -- 2502.01(a) carries a

19  statutory maximum penalty of one year of imprisonment.

20  Probation is permitted under the applicable statutory

21  provisions.  And the charge of attempted possession of a

22  large capacity ammunition feeding device in violation of

23  22 D.C. Code § 1803 and 7 D.C. Code § 2506.01(b) carries a

24  statutory maximum penalty of 180 days of imprisonment.  As with

25  the other local offense, probation is permitted under the

1    applicable statutory provisions.

2        If a term of imprisonment is imposed, the statutes

3    provide that Mr. Chazin faces a supervised release range

4    following imprisonment of at least 5 years, and under the

5    guideline range -- under the guidelines, that range is also at

6    least 5 years; and it's 5 years to life.

7        For Counts 2 and 3, the D.C. Code offenses, there are no

8    statutory provisions regarding the imposition of supervised

9    release for those misdemeanor offenses.

10        With respect to Count 1, the statute of conviction sets

11    the maximum fine of up to $250,000, while the guideline fine

12    range is between 25,000 and 250,000 dollars.  The defendant is

13    obligated to pay a $100 special assessment.  The defendant must

14    pay an additional $5,000 special assessment unless this Court

15    finds that he's indigent; and the Court may order a further

16    assessment of up to $17,000.

17        For Count 2, the maximum fine is $2500, and the

18    defendant is obligated to pay a special assessment of between

19    50 and 250 dollars.

20        For Count 3, the maximum fine is a thousand dollars, and

21    the defendant is obligated to pay an additional special

22    assessment of between 50 and 250 dollars.

23        And the statutory and guideline restitution provisions

24    in the federal statutes are applicable to Count 1 for

25    possession of child pornography, and they also require

1    defendants to pay restitution for this federal offense.  The

2    government has submitted restitution requests on behalf of

3    three identified victims.  Maureen seeks restitution in the

4    amount of $10,000; Pia seeks restitution in the amount of

5    $5,000; and Lily seeks restitution in the amount of $10,000.

6         Have the parties -- we already talked about this --

7    agreed on a restitution amount?  Although, Mr. Onorato, you

8    mentioned -- is it $3,000?  That is -- is that the statutory

9    minimum restitution amount?

10             MR. ONORATO:  It is, Your Honor.

11             THE COURT:  All right.  And that's what the

12   government is requesting in this case, Ms. Larson?

13             MS. LARSON:  Yes, Judge, 3,000 per victim.  So that

14   would be a total amount of $9,000 restitution.

15             THE COURT:  Okay.  All right.  So have I stated

16   accurately the statutory and guideline framework under which we

17   are operating?

18        Ms. Larson?

19             MS. LARSON:  Yes, Judge.

20             MR. ONORATO:  Your Honor, you have with one

21   exception.  When you provided the charge, you called it a

22   distribution and then you correctly stated that there was not a

23   mandatory minimum.  So I wanted to correct the record.  I know

24   what the Court meant, but it's a possession charge.

25             THE COURT:  I -- sorry.

 1          MR. ONORATO:  No, no.  It's okay.

 2          THE COURT:  I apologize.  Yes.  The charge of

 3   possession of child pornography.

 4          MR. ONORATO:  Yes.

 5          THE COURT:  Thank you.

 6      Okay.  Before I -- I'm just trying to think.  I'm

 7   thinking about the findings that I need to make with respect to

 8   the financial obligation.  So the special assessment provision

 9   under federal law beyond the hundred dollars, the $5,000

10   provision, requires me to make a finding about indigency

11   status.

12          So maybe let me ask Ms. Willett whether the probation

13   office had a view of that in terms of the Court's obligation to

14   require an assessment in that amount.

15          THE PROBATION OFFICER:  Yes, Your Honor.  We did not

16   recommend an assessment for the $5,000 in this case based upon

17   our determination of -- of Mr. Chazin's financial ability to

18   pay.  He will have the restitution obligation, as well as

19   special assessments imposed as a result of this conviction, and

20   he faces potential incarceration and loss of income.

21          THE COURT:  Okay.  So the -- and so I assume that

22   carries to 17- -- the potential 17,000 as well?

23          THE PROBATION OFFICER:  Yes, Your Honor.

24          THE COURT:  And did probation have a recommendation

25   on the D.C. Code assessment of between 50 and 250 dollars?

1          THE PROBATION OFFICER:  Yes, Your Honor.  We

2     recommended that the Court impose a $100 special assessment on

3     Count 2 and a $50 special assessment on Count 3 for the

4     D.C. Code offenses.

5          THE COURT:  Okay.  Let me ask counsel for either side

6     whether they have any objection to or discussion of the

7     probation office's recommendations in this regard?

8          MR. ONORATO:  Not on behalf of Mr. Chazin,

9     Your Honor.

10         MS. LARSON:  The government concurs with probation's

11     recommendation, Your Honor.

12         THE COURT:  Okay.  That's helpful.  Thank you.

13         So we've reached the point now in which the parties will

14     have the opportunity to address the sentencing guideline

15     calculation, the Court's considerations under 3553(a), or

16     anything else that they would like the Court to take into

17     account for the purpose of its sentencing.

18         Let me start with Ms. Larson and ask whether the

19     government wishes to speak about the application of the factors

20     at this time?

21         MS. LARSON:  Yes, Judge.  Briefly.

22         The government is asking, as this Court's aware, for a

23     guideline sentence of between 78 and 97 months, in addition to

24     the $9,000 restitution that we have previously spoke about.  We

25     are asking for a term of supervised release.  In this case

1    we're asking for 120 months, understanding that the minimum is

2    60 months.  But for the reasons that we address, a longer

3    period of supervised release is appropriate here.

4         These cases, as this Court is aware, are quite

5    challenging, particularly when the Court is faced with an

6    offender like Mr. Chazin that is younger in age.  The Court's

7    aware that in the vast majority of child pornography offenses,

8    offenders come before this Court with no criminal history, no

9    histories of arrest, et cetera.

10        The government took some time to explain at least part

11   of why that is not uncommon in these cases.  And, again, it's

12   because children do not disclose sexual abuse; these are crimes

13   that are committed in secret, they are crimes that are easily

14   committed because of the universal presence of the internet, as

15   well as the ever-expanding prevalence of handheld mobile

16   computing devices.

17        They're very difficult to detect.  And as we see in this

18   case, the defendant was, in fact, engaging in criminal behavior

19   going back, as last as far as we can prove, until December of

20   2016, and he was not caught until Dropbox alerted the National

21   Center for Missing and Exploited Children to the fact there was

22   this type of conduct and content and material in his Dropbox

23   account.

24             THE COURT:  And I'm sorry, Ms. Larson.  When you say

25   "going back" as far as 2016, is that the government's exhibit?

1    Is that what you're showing me with this list?  Can you just

2    explain a little bit about that?

3           MS. LARSON:  Absolutely, Judge.

4        So what this exhibit is -- the government's sentencing

5    memo, Exhibit 1, this is what we call an upload log.  It was

6    produced to us pursuant to a search warrant for the defendant's

7    Dropbox account, and what this shows is the exact time and date

8    where content was added to this defendant's account.

9        So what we see here is the relevant time frame starts in

10   December 28th of 2016.  And as was briefly alluded to during

11   the plea colloquy, what we know about this time period, by all

12   accounts, is that the defendant was stationed in Fort Hood,

13   Texas, at this time.  So we see a tremendous amount of content

14   hitting this Dropbox account and being organized into a folder

15   that's labeled "1 young."  That's on the far right hand of the

16   chart that the government has provided to the Court.  And then

17   the series of letters and numbers that end in mp4, that is --

18   each one of these represents a different image and/or video

19   that has all been organized into this young folder.  What we

20   see as we move through this multipage exhibit is that content

21   was added to this Dropbox account both on December 28th of

22   2016, as well as December 29th of 2016.  A tremendous amount of

23   content.

24       Then the content is added to again after a gap in time

25   on March 17th of 2017.  And the last time that content was

1     added to this particular account that the government's aware

2     of, was June 21st of 2017.  And that last video is -- goes into

3     the "V1" folder, and it's "petof. voyer octubre (26).mp4."  So

4     that's a video that was added in June of 2017.  All of this was

5     going on, again, in the absence of law enforcement detection.

6          It wasn't until March of 2019 that this account was,

7     again, accessed.  Dropbox reported the access of this account

8     that contains the child pornography to law enforcement.  That's

9     what launched our investigation.

10          And as this Court is aware, we obtained a search warrant

11    for the Dropbox account.  We were able to determine that in

12    this young folder, that's where the majority of the child

13    pornography is.  What I'd like to point out in terms of our --

14    our sentencing recommendation here is, again, we realize that

15    this is a challenging case because of the defendant's young

16    age.  However, that cuts both ways here.  Is this something

17    where we just caught this offender early, or is this something

18    where this truly is a one-time incident that would never be

19    repeated again?

20          The problem with his young age is, even with the

21    psychosexual evaluation, he's at a higher rate to reoffend and

22    he has a longer period in which to commit offenses because if

23    an incarcerated sentence is imposed, he will still be much

24    younger than the average offender when he's released, which is

25    part -- which is, honestly, our basis for the 120 months'

1    supervised release that we are asking for.

2         The defense here is asking this Court to impose a

3    sentence of probation, which, as the Court is aware from the

4    probation recommendation, is not recommended.  In fact,

5    probation is asking for a downward variance, but they are still

6    asking for a 28-month sentence.

7         The guidelines calculation is a great starting point of

8    78 to 97 months, but then the Court is required to look at the

9    factors, as you stated, under 3553(a).  The sentencing memo and

10   the recommendation asked for by the defense ignores the 3553(a)

11   factors.  The memo largely glosses over the serious nature of

12   the offenses here.  As the government went on in our sentencing

13   memo, these crimes are extremely serious.

14        This Court is aware that these images and videos depict

15   the graphic sexual assault of very innocent and vulnerable

16   children.  In this case, we have images depicting both

17   sadomasochistic conduct, as well as the sexual abuse and rape

18   of children as young as toddlers.  I'm a little confused by the

19   defense memo and the recitation in the PSR because the

20   defendant's version of events here seem to be completely

21   created out of whole cloth fabricated and really doesn't match

22   with any of the evidence that the government has ascertained as

23   part of our investigation.

24        It's just not consistent with the records that we've

25   provided to the Court and what we're seeing on the digital

1    devices; that this is someone who is downloading copious

2    amounts of legal adult pornography and somehow, oops, one image

3    of a child or a minor got in there.  As we've talked about,

4    this specific folder in this Dropbox account labeled "young,"

5    it's not children of questionable age.  The vast majority of

6    content in that folder is prepubescent children and children as

7    young as toddlers.

8         And as we know, when we went and looked at his digital

9    devices that were recovered during the search warrant, there

10   are thumbnail images which show that that's what he's viewing.

11   He's viewing images of prepubescent children being sexually

12   assaulted.  So it's just not consistent with what we see here

13   that he somehow accidentally clicked on a link and was not

14   aware of what was in there.

15        Beyond that, Judge, a sentence of probation here does

16   not have a deterrent effect.  It certainly does not send a

17   message to others who would engage in this type of conduct.  It

18   certainly does not deter this defendant because, quite frankly,

19   it is a slap on the wrist.  It is something that is -- he is

20   able to continue on day-to-day life.  It does not promote

21   respect for the law, and it simply is not sufficient to protect

22   the public.

23        With respect to the forensic evaluation here, again,

24   Judge, what we have is an evaluation that one was hired and

25   paid for by the defense.  It is largely based on this

1    defendant's self-report.  As I've just indicated, the reality

2    is that that self-report just does not square with the evidence

3    in this case.

4        We do know that there was internet search history.  It

5    only goes back to about six months prior to the execution of

6    the search warrant.  It does not cover the time period when we

7    know that the content was being added to this Dropbox account.

8    So we have no way to verify or disprove this current allegation

9    that he clicked on a link.  It certainly does not cover the

10   time period when we know that he accessed that Dropbox account,

11   which was the report to the National Center for Missing and

12   Exploited Children and then, correspondingly, also reported to

13   law enforcement.

14       Again, we would also point out the fact that some of the

15   cases that the defense is citing, in addition to making an

16   argument for why probation is -- is appropriate and noting

17   disparities, a lot of those cases are over a decade old.  Some

18   of them are referring to state cases.  And, again, the

19   applicable guidelines range would not -- would not be

20   appropriate in the state cases because they are not guided by

21   the sentencing guidelines that this Court is, as well as the

22   3553(a) factors.

23       For all those reasons, Judge, we are asking for a

24   guideline sentence.  Because of this offender's young age, we

25   are asking for an extended period of supervised release in

1   addition to the mandatory $9,000 in restitution.

2          THE COURT:  Can I ask you one more question.  The

3   organized into a folder bit that's a part of the exhibit, is it

4   the government's position that that folder was organized by the

5   user of the Dropbox -- Dropbox account?  It didn't come already

6   preorganized?

7          MS. LARSON:  That is -- that is our position.  That's

8   consistent with our evidence that inside that Dropbox account

9   there were different folders:  "young," "babes," "vids,"

10  "videos," as well as one that said mine.  And so these were all

11  organized, and our understanding, it is by the user.

12          THE COURT:  Thank you.

13          All right.  Mr. Onorato.

14          MR. ONORATO:  Thank you, Your Honor.  Good morning.

15  May it please the Court.

16          Your Honor, I've listened to the government's

17  allocution, and what -- what I see from Exhibit 1 is that on

18  four dates, Mr. Chazin downloaded images into his Dropbox

19  account.  And I say that if you look at December 28 of 2016,

20  that's more than four and a half years ago.  December 29th of

21  2016; March 17th of 2017; and June 21st of 2017.  So we're

22  talking almost five years ago that Mr. Chazin clicked on links

23  and downloaded those images onto his Dropbox account.  And the

24  government is asking the Court to speculate that he organized

25  all of that information.

1          What I can tell the Court is that Mr. Chazin will tell

2     you himself is that he did collect pornography.  He did

3     download images, and he got a mixed bag.  And some of these

4     images were child pornography, but what the government isn't

5     telling you on those four dates, there are merely, you know,

6     48 files; 35 of which are whole and then 13 that are partial.

7     And so the last criminal act of him downloading any type of

8     pornography was almost four years ago from today's date.

9     That's from -- from uploading it into that Dropbox account.

10         It doesn't mean that it wasn't accessed, and I'll

11    discuss that.  But it certainly isn't the typical case that

12    this Court sees with someone involved in child pornography.

13         Moreover, Judge, at that time period, Mr. Chazin would

14    have been 19 years old.  He's now older, but it was -- it was a

15    long time ago.

16         And so when you look at the evidence, that Dropbox

17    account was last accessed on July 15th of 2019.  And so

18    six months later, the government executes a search warrant.

19    And that's in February of 2020.  And what is telling, and what

20    the government downplays, is that you have a window and they

21    have a window into what's into this young man's mind in that

22    period of time.  And if he were the pedophile, if he was the

23    purveyor of this information, he would be downloading this

24    stuff.  He doesn't know law enforcement is looking.

25         And so the best evidence is the fact that between

1      July when it was last accessed and February, there's not a

2      single search for child pornography.  There's not a single

3      search for an illegal website.  The only content that's there

4      is adult-content pornography available on a commercial

5      mainstream platform called Pornhub.  In other words, he's not

6      searching for child pornographic material; and, frankly, the

7      government's cookie-cutter approach must be rejected

8      universally by this Court.

9           Your Honor, if you look -- and the Court has had

10     experience in these types of cases.  It doesn't seem to ring

11     true that the -- the position that the government's advocating

12     for would -- would be connected to Mr. Chazin.  I mean, you

13     would have more recent evidence of downloads of child

14     pornographic images.

15          And, Your Honor, when you ask about aggravating factors

16     or you consider aggravating factors in these type of cases,

17     we've all seen them.  There are people who are trading images

18     with law enforcement.  There are people who are distributing

19     images.  There are people who are looking to have sexual

20     relations by meeting an undercover officer.  None of that is

21     present here.

22          What we have before us is a young man who made poor

23     decisions.  He understands that when he got child pornography

24     in that inbox, he deleted some of it, but he kept it.  And he

25     was wrong for keeping it, and there was knowing possession, but

1    when you look at the record post-2017, there's just no evidence

2    before the Court to show that he's interested in child

3    pornography.

4         And Ms. Larson ignores the fact that Dr. Snably is an

5    expert in this area.  And, you know, frankly, Judge, when you

6    look at the evidence that Dr. Snably cites in her report, you

7    see there are more than 60,000 images in his possession, and

8    yet only 7 or so images contain child pornography.  And that's,

9    again, in that six-month period.  This shows a young man who

10   made a bad judgment, who exercised bad judgment, but certainly

11   isn't someone the Court needs to incarcerate the way the

12   government describes.

13        And what's interesting, Judge, is that we have one

14   prosecutor in this district; right?  So -- in Pennsylvania or

15   in Massachusetts or in Delaware, you have multiple prosecutors

16   who are making a decision.  And when you're talking about 35 to

17   48 images, that's relatively mundane when you consider these

18   cases.  He didn't have a choice where the case was brought, but

19   Ms. Larson did.  And there are plenty of instances where

20   prosecutors in federal court rejects those.  Courts look at

21   conduct like this and much worse and give probationary

22   sentences.

23        In fact, I know this Court has seen cases where

24   individuals have distributed and received images similar to

25   what's going on here and given a three-month sentence.  And so,

1   Your Honor, I think when the Court considers Mr. Chazin, the

2   fact that he did not download these images for at least

3   four years, and what he's going to tell the Court about his

4   rationale for being involved in this, I think it's compelling.

5        And, Judge, more importantly, you've got a young man --

6   Ms. Larson talks about, you know, sending a message.  He's a

7   registered sex offender.  He lost his fiancée.  He's had his

8   life destroyed.  This is not a walk in the park for Mr. -- he's

9   lived with this case for the last 18 months, not knowing if

10  he's -- when he's going to go to prison or what is going to

11  happen to him.  This is not a pleasant experience.

12       And for the government to suggest that, again, Judge, we

13  need to take a cookie-cutter approach and do what the

14  guidelines -- and not consider any of the individual factors, I

15  think is outrageous and over the top.

16       I think when the Court balances the factors that are

17  properly before it, given his military service, his lack of

18  criminal history, the lack of any searches for this type of

19  material, all show the Court he's someone who's worthy of a

20  second chance.

21       And, Your Honor, based on those factors, I respectfully

22  request that the Court give a variance to a probationary

23  sentence, which is, frankly, in line to the numerous cases that

24  we've cited.  Mr. Chazin is someone who, I think, the Court can

25  put trust in and not have to worry about him committing any

1    other kind of offense in the future.

2         Thank you.

3              THE COURT:  Thank you, Mr. Onorato.

4         Mr. Chazin, do you have something that you would like to

5    say to the Court?  If so, now would be the time.

6              THE DEFENDANT:  Yes, Your Honor, I do.

7              THE COURT:  Let me ask you to speak up, if you would,

8    so we can make sure we can hear you.

9              THE DEFENDANT:  Yes, Your Honor.  Good morning,

10   Your Honor.

11        I would like to apologize to the Court, to my family,

12   and, most importantly, to the victims for my actions.  I

13   understand that my actions were wrong, and I'm very sorry.  I

14   made serious and bad choices by accepting pornography from

15   people I met online and did not know.  I was not looking for

16   child pornography, and I have never intentionally sought out

17   child pornography.

18        Because of that, most of the files I received in those

19   chat rooms were adult images, were adult pornography.  I would

20   download the files and save them to my Dropbox and then look at

21   some of the images I had received.  On a few occasions I would

22   come across images of minors when doing the download files.

23   Sometimes I would delete those images both that had minors and

24   adults.  And other times I would simply leave the files in the

25   folder without deleting, against my better judgment.  Even

1    though I had no interest in the children, I did not delete

2    them.

3              THE COURT:  Mr. Chazin, I'm having a hard time

4    hearing you.  So if you can make sure to speak up a little bit

5    louder.  Okay?

6              THE DEFENDANT:  Yes, Your Honor.

7         Sometimes I would delete the images, both those that had

8    minors and adults, and other times I would simply leave the

9    files in the folder without deleting them.  Even though I had

10   no interest in images of children, I did not delete some of

11   them, even though I knew at the time some of the images in the

12   photos were wrong.

13        The images that were found in my account and devices

14   were images I did not delete, but I should have.  But that is

15   why we are here.  That is why there are so few images of

16   children on my devices.  I accessed the Dropbox folders over a

17   few times over a period of years.  I can assure you that I did

18   not access those folders in order to view the child

19   pornography.  I have never been interested in child

20   pornography, which is reflected in my engine search history.

21        I also understand and accept I'm responsible for

22   possessing those images, even though I did not deliberately

23   seek them out.  I knew they were contained in some of the file

24   downloads, and it is my responsibility to merely delete them or

25   bring them to -- to the police, and I didn't.  As a result, I

1    have changed my life for the worse for forever.

2          I have read the letters that have been submitted by the

3    victims of these crimes and their families, and I am deeply

4    saddened that I got involved in this horrific crime.  I

5    understand how their lives have been changed forever and -- by

6    what happened to them and what they continue to experience in

7    everyday life.  They have done nothing wrong and don't deserve

8    what has happened to them.  And it makes me sad that they have

9    to continue on with this lifestyle and that I have contributed

10   to their pain and suffering; not only the victims, but to the

11   victims' family and friends and other loved ones.

12         I know you have read what my lawyer has sent you about

13   me, including the doctor's report and character letters.  I

14   have served in the Army and tried to be a good son, brother,

15   friend, and citizen.  I have been trying my best to prove that

16   I am a hard-working, responsible person.  Since I moved back to

17   Washington, D.C., from South Carolina, I found a full-time job,

18   and I will continue to prove that I am a law-abiding citizen

19   and I am responsible.

20         The case will deeply affect me for the rest of my life.

21   I know that I will have to register as a sex offender and

22   things will be difficult for me.  But I realize that I am the

23   only one responsible for my actions.  I am responsible for who

24   I am, for where I stand today, and I will not run from the

25   challenges that lie ahead of him.

1          I am hopeful for the opportunity for a second chance.

2     I'm asking you to consider all of the evidence in the case and

3     allow me to prove myself to you.  Again, I am sorry to my

4     friends, my family, the victims, and the victims' families.

5          Thank you.

6          THE COURT:  Thank you, Mr. Chazin.

7          We're going to take a break.

8          Let me just ask Mr. Onorato one thing that I neglected

9     to ask while you were giving your presentation.  I know that

10    you have many of the documents related to the defendant's case

11    under seal.  Mr. Chazin mentioned, for example, the family

12    letters.  It's not ordinarily my practice to do so.  So I just

13    wanted to get a sense of your thoughts on this.  I know that

14    we -- we seal sex offender reports, but things like the

15    letters, the character letters, we -- we redact certain

16    information, but they're not filed under seal as a typical

17    matter.

18         MR. ONORATO:  So, Your Honor, I believe I did file

19    those redacted --

20         THE COURT:  Okay.

21         MR. ONORATO:  -- on the open record at the same time

22    I filed the motion for the Court.  And I just removed, kind of,

23    sensitive information about Mr. Chazin's brother, you know,

24    medical material, and the doctor's report.  But I do think a --

25    a copy has been filed on -- on the public docket that I think

1    meets with what the Court suggests.

2              THE COURT:  All right.  Well, I'll go back and take a

3    look at that in connection with deciding your sealing motion,

4    but I just want to make that clear in terms of what my standard

5    practice is.

6              MR. ONORATO:  I understand that.  And I may have done

7    it a little bit in -- in anticipation, but I made some judgment

8    calls in terms of what we thought would be appropriate to

9    redact.  And so the Court should have two copies, one

10   unredacted and one redacted, on the public document.

11             THE COURT:  All right.  I'll take a look at that.

12        Let's break until 11:45, and then I will come back and

13   pronounce sentence.

14             MR. ONORATO:  Thank you.

15             THE COURT:  All right.  Thank you.

16             (Recess taken.)

17             THE COURT:  We've returned.  Do we have everyone in?

18             MR. ONORATO:  Yes, Your Honor.

19             THE COURT:  The Court has calculated the sentencing

20   guidelines and heard the statements made by counsel and by the

21   defendant, and it must now consider the relevant factors laid

22   out by Congress in 18 U.S.C. § 3553(a) in order to ensure that

23   it imposes a sentence that is sufficient but not greater than

24   necessary to comply with the purposes of sentencing.

25             These purposes include the need for the sentence imposed

1    to reflect the seriousness of the offense, to promote respect

2    for the law, and provide just punishment for the offense.  The

3    sentence should also deter criminal conduct, protect the public

4    from future crimes by a defendant, and promote rehabilitation.

5         In addition to the guidelines and policy statements,

6    this Court must consider the nature and circumstances of the

7    offense, the history and characteristics of the defendant, the

8    types of services available, the need to avoid unwarranted

9    sentencing disparities among defendants with similar records

10   who have been found guilty of similar conduct, and the need to

11   provide restitution to any victims of an offense.

12        This Court has considered all of these factors when

13   deciding what the appropriate sentence is in this case, and in

14   accordance with my ordinary practice, I won't detail my

15   considerations with respect to each factor orally here today,

16   but I do think it is important for me to say something for the

17   record and for you, Mr. Chazin, about the nature and

18   circumstances of your offense, your history and

19   characteristics, and the need to avoid unwarranted sentencing

20   disparities.

21        With respect to the nature of the offense, it is very

22   important that you understand that possession of child

23   pornography is an extremely serious federal crime.  In the

24   sentencing memoranda that your counsel submitted on your

25   behalf, your counsel represents that you understand the

1    seriousness of the offenses that you committed and that you are

2    embarrassed, ashamed, and remorseful.  And the letters that I

3    received from your friends and family similarly suggest that

4    you recognize the mistake that you made, that you truly regret

5    your actions and that you fully understand the consequences.  I

6    don't have any letter from you that says anything of the sort,

7    but you did say here today that you understand the impact of

8    your determinations and your conduct.

9         But I have to tell you, Mr. Chazin, that one of the

10   things that I try to do as the judge in a case such as this one

11   is really get a sense of whether a defendant actually

12   understands how terrible this crime is and why it is so

13   heinous.  This is crucial, in my view, that a child pornography

14   defendant recognizes and appreciates the essence of the crime

15   at issue; in part, because it's so easy to think that this is

16   just a simple thing, that this is just a little thing, that,

17   you know, some -- someone who isn't actually engaged in the

18   process of making these kinds of photos isn't at fault.

19        And so what I feel the need to do in cases of this

20   nature is to make clear that possession of child pornography is

21   much more than just viewing something inappropriate or

22   disgusting or taboo, and that's whether a particular defendant

23   derives any pleasure from the photos or not.  That was a theme

24   that sort of went through your counsel's memo; that, you know,

25   you didn't really take any pleasure in this.  Regardless, it's

1    still a serious crime.  So let me be as clear as possible about

2    this.

3         This crime involves people taking pictures and videos of

4    real children while those children are being sexually abused

5    and putting those pictures on the internet for other people to

6    see.  And from the statement of offense, it appears that you

7    possessed dozens of images and videos of children in sexually

8    compromised positions.  Some of them -- the pictures that you

9    had -- included images of children engaged in sadomasochistic

10   acts.  And let me just say, that it is not especially

11   mitigating that these pictures may have been uploaded

12   four years ago.  I understand; your counsel says this is not

13   something that was of recent vintage.  Okay.

14        But there are still pictures of children being sexually

15   abused on your computer for all that period of time, and you

16   suggested that you deleted some, but it's clear that you did

17   not delete all.  And so what I want you to understand is the

18   damage that is being done to the young children in the photos

19   and the videos you possessed because knowledge of that is going

20   to be crucial for your rehabilitation.

21        On the one hand, your sentencing memoranda suggests that

22   you understand, as I've said, the seriousness of the danger and

23   the abuse.  On the other, the memoranda says that, really, you

24   know, the deletion or closure of these files was -- should be

25   enough for the Court to glean that you were not really all that

1   involved.  The forensic psychological evaluation that you

2   submitted says that you told the examiner that you now

3   understand why your actions demonstrated poor judgment, and the

4   examiner included that you seem relatively satisfied with

5   yourself and saw little need for significant changes in your

6   behavior.

7        Well, again, we're talking about conduct that goes well

8   beyond poor judgment.  And the government is not charging you

9   with possession merely to go up the chain and find the person

10  making such materials, which is what at one point you appeared

11  to suggest.  Real children are being terrorized to create child

12  pornography.  They are not knowing and willing participants in

13  the degrading conduct.  They were being forced to commit

14  unspeakable acts of sexual violence for the pleasure of the

15  person who was filming and for the gratification of sick people

16  everywhere, people who apparently have no shred of empathy for

17  what this kind of conduct does to the children who are being

18  abused in this way.

19       And let me just say that the impact of this crime is not

20  speculative.  Again, it's sort of like we have photos floating

21  out there and they're not necessarily connected to the people

22  who are in them, such that one can imagine a whole community of

23  people who are viewing these pictures without really thinking

24  about the impact on the children who are in them.

25       But in this case, there were victim impact statements.

1    You said that you've read them, and I appreciate that.  I've

2    read them, and I've read other similar statements from victims

3    of this crime in other cases.  And all of them, in my view, are

4    harrowing.  You can imagine, Mr. Chazin, what it must be like

5    for someone to be the victim of sex abuse as a child and, if

6    that's not bad enough, to know that that abuse was actually

7    videotaped and put up on the internet for everyone to see

8    forever.

9         In the statements submitted here, one victim states that

10   she can never feel safe -- never feel safe -- so long as her

11   images are out there; that she constantly wonders if the people

12   she knows and the strangers she encounters in her everyday life

13   have seen the images of her on the internet.

14        Another victim expresses a similar sentiment,

15   emphasizing that she does not trust anyone around her or

16   herself, and she feels that she must always stay vigilant in

17   case someone recognizes her from the images circulating online.

18        In this case there was also a quite striking letter from

19   the mother of a child pornography victim who explains how her

20   child's life has been changed forever.  Her daughter has

21   suffered crippling insecurity, is afraid of the internet.  She

22   also speaks directly to defendants of child pornography crimes

23   when she remarks, quote, I want to keep my child in a bubble

24   and to ensure that she's safe from people like you.

25   Unfortunately, her abuse is on the internet.  How can I

1      reassure her that those images and videos are no longer being

2      circulated online, end quote.  She also wishes that defendants

3      in these cases, quote, understand the damage that you've done

4      to my daughter.  I want you to understand the tremendous cost

5      she bears and I bear for the damage you've done by invading my

6      daughter's privacy and circulating her images, end quote.

7           And I do appreciate, as Mr. Onorato points out, that you

8      were not active in the circulation, and we'll talk about that

9      in terms of what that means for the ultimate sentence.  But the

10     victims have made crystal clear that the conduct of merely

11     possessing child pornography is a significant harm in and of

12     itself, even if the defendant had no role in producing or

13     circulating the content that he possessed.

14          To put an even finer point on it, Congress understood

15     that the mere possession of these kinds of images is a serious

16     problem because the market for producing pictures of children

17     being molested and raped is driven by those who want to see

18     those pictures.  If the lookers weren't there, Mr. Chazin, if

19     the interest wasn't there, then there would be fewer child

20     victims, which is why I believe Congress made child pornography

21     possession, mere possession of child pornography, a federal

22     offense.

23          So the question for the Court becomes how to assess the

24     seriousness of your child pornography offense for the purpose

25     of the sentence to be imposed as section 3553(a) requires.

1    Your counsel, just like many others in this area, has suggested

2    that I discount substantially the guideline assessment because

3    the child pornography guideline itself is not the product of

4    the Sentencing Commission's empirical assessment.  The

5    guidelines include and emphasize certain factors that have been

6    widely criticized, even by the Sentencing Commission itself,

7    and the Court does generally agree with that kind of

8    commentary.  I've long considered it appropriate to make some

9    adjustments to the guideline calculation as it relates to child

10   pornography crimes.  And, again, not because the crime isn't

11   serious, but because of the way in which the guidelines account

12   for it.

13        I've stated in other similar cases -- and I'll say here

14   again -- that the guideline factors are in many ways outdated.

15   And at least some of these no longer adequately distinguish

16   between more serious and less serious child pornography

17   offenses.  So, for example, the guidelines include a 2-level

18   increase for use of the computer, and they also provide for a

19   substantial enhancement for the number of images stored on a

20   computer's hard drive.  Whatever the state of law and

21   technology at the time the guidelines were first adopted,

22   neither the use of the computer nor the number of images are

23   especially aggravating factors today.  So the Court has taken

24   this into account.

25        The fact that a computer is at work with respect to

1    nearly all child pornography offenses and it's so easy to

2    receive, possess, and distribute child pornography

3    electronically, that the numbers of images and the use of

4    electronic medium no longer signal an especially heinous or

5    egregious offense.

6         I will apply my general policy disagreement with the

7    2-level guideline enhancement for use of a computer and the

8    5-level enhancement for the number of images.  I'm going to

9    exclude the 2 points as a variance for the computer use and

10   impose only a 2-level increase to account for the size of your

11   collection.  And, again, I'm varying from the guidelines range,

12   and so that's -- I'm going to consider you to have

13   approximately 5 levels off as a result.

14        Now, let me just speak to the presentence report

15   suggestion that I should go even further and also exclude the

16   2 points for materials involving a prepubescent minor and the

17   4 points for materials portraying sadistic or masochistic

18   conduct.

19        The probation office explains that 95 percent of child

20   pornography cases involve an enhancement for a prepubescent

21   minor, nearly 75 percent involving an increase for -- of the

22   kind of depiction that is enhanced under the guidelines.  I

23   wonder whether or not that's, in part, because of prosecutorial

24   charging determination.  But, in any event, I view those

25   enhancements as actually different in -- in kind than the two

1   that I automatically otherwise discount.

2       Unlike the enhancements for use of a computer and number

3   of images, in my view, those two, the age and sadomasochism,

4   relate to the nature of the images that a defendant possesses,

5   which is, in fact, quite relevant to culpability.  So those

6   enhancements, I think, still distinguish between more and less

7   culpable behavior; and, therefore, I am going to continue to

8   take those into account in sentencings of this nature.  I'm

9   still going to apply those increases.

10      So as a practical matter, given the reductions that I

11  made for the other policy disagreements, I consider you to be

12  at an offense level of 23 rather than a 28.  And at that

13  Criminal History Category I, that offense level carries a range

14  of 46 to 57 months.

15      Now, turning to your history and characteristics as an

16  offender.  The probation office has found that you have no

17  prior criminal history, which, as the government says, is not

18  unusual for cases of this type.  I do appreciate that you

19  served in the military.  I think that is important.  And that

20  you also, as you've said, have the ability to contribute

21  meaningfully to society, in part, because of your relatively

22  young age.  I've taken that into account.  The government says

23  it cuts both ways, and I agree with them on that point as well.

24      It is significant that the expert who conducted the

25  psychosexual evaluation determined your behavior does not

1    appear to be motivated by a sexual attraction to prepubescent

2    children and that you appear to be no more than average risk

3    for committing future sexual offenses.  The Court notes that --

4    that it has to discount somewhat the reliability of these

5    conclusions because they're based largely on your self-reported

6    representations to an examiner that you have hired for this

7    report.  But I have taken them into account, and I have

8    considered them in thinking about what the appropriate sentence

9    is in this case.

10          I've also reviewed and considered the letters that have

11    been submitted on your behalf.  You have a lot of support,

12    Mr. Chazin, and I always appreciate getting letters from a

13    defendant's friends and family because people who know a

14    defendant can attest to his true character.  These letters

15    describe you as caring and hard-working, smart, dependable.  I

16    have no reason to doubt those representations, and you should

17    be quite proud of having developed such a following among

18    people who view you in that fashion.

19          You should also be quite sad to know how your criminal

20    conduct may have impacted the people who know you and trust you

21    and care about you, and I hope that you will be honest with

22    these people moving forward.  Because in addition to needing

23    treatment, you're going to need their help, not only during

24    your period of incarceration but afterwards when you return to

25    the community.  There will be lots of restrictions that the law

1   requires because you're a convicted sex offender, and you're

2   going to need their support to get through the next phase of

3   your life and beyond.

4        The third and final consideration that I will discuss is

5   the need to avoid unwarranted sentencing disparities.  And this

6   is a factor that your counsel focused on in his brief, and it's

7   one that is often very important in my consideration of how to

8   sentence a defendant.  I've considered the cases that your

9   attorney cited in his memoranda, and I'm aware that similarly

10  situated defendants sometimes receive sentences well below the

11  sentencing guidelines range with respect to this particular

12  crime, both in this district and nationwide.

13       I'm also aware that every case presents its own unique

14  circumstances to a certain extent, and the practices of other

15  judges with respect to sentencing and -- and sentencing child

16  pornography offenders in particular, those are not binding on

17  me.  Also, given the extraordinary variation in sentencing

18  practices with respect to these kinds of crimes, I find it is

19  especially important to look at my own prior cases when

20  analyzing potential sentencing disparities.

21       Your lawyer's sentencing memoranda notes the case of

22  Wesley Hawkins who also pled guilty to one count of child --

23  possession of child pornography.  He had the same criminal

24  history category, and he had a higher guideline range than you

25  do.  In Mr. Hawkins's case, I ultimately sentenced Mr. Hawkins

1    to 3 months of imprisonment and 73 months of supervised

2    release.  But I will say that I remember Mr. Hawkins's case

3    well, even though it was many years ago now, and it involved

4    several extremely mitigating circumstances that are not present

5    with respect to you, Mr. Chazin.

6         I had another child pornography possession case that

7    your counsel did not focus on in his memo.  I sentenced

8    Mr. Stewart after I sentenced Mr. Hawkins.  That case can be

9    found at 16-cr-67.  And it also seems relevant because, again,

10   it's related to possession of child pornography as opposed to

11   distribution.  Mr. Stewart pled guilty to one count of

12   possession of child pornography, just as you had.  He had the

13   same absence of criminal history.  He had a higher guideline

14   range than you do, and there were facts in the record that

15   indicated that his possession conduct was actually more serious

16   than yours.

17        He engaged with an uncover officer.  He distributed some

18   images, even though he was only charged with possession.  He

19   sought out pornographic materials involving young children.  In

20   that case, under those circumstances, I sentenced Mr. Stewart

21   to 57 months of imprisonment and 120 months of supervised

22   release.

23        All things considered then, the need to avoid

24   unwarranted sentencing disparities supports the imposition of a

25   sentence in this case that is greater than the sentence that

1    the Court imposed in Mr. Hawkins's case but lower than the

2    sentence that this Court imposed in Mr. Stewart's case.

3         Another relevant data point is how this possession

4    offense relates to cases involving the possession and

5    distribution of child pornography.  Congress has deemed

6    distribution to be a more serious offense.  And, accordingly,

7    it has required judges to impose statutory minimum penalties of

8    5 years or 60 months of imprisonment when distribution is

9    charged.

10        This means that unlike the government's argument, I

11   cannot see imposing more than a person who would have

12   distributed child pornography to you as a mere possessor, but I

13   often sentence defendants charged with distribution to the

14   mandatory minimum of 60 months even when their guideline range

15   is higher.  As I mentioned earlier, taking account of my policy

16   disagreement, I consider you to have a guideline range of 46 to

17   57 months, which means there's a 14-month difference between

18   the low end of that range, the 46 months, and the 60-month

19   mandatory minimum for distribution.  I do think that mere

20   possession offenses, which is what we have in this case, are

21   substantially less serious than distribution offenses from the

22   standpoint of the harm.  And I think that the probation office

23   in this case has made a similar assessment.

24        I've considered everything, including the nature and

25   circumstances of the offense, your history and characteristics,

1    and the need to avoid unwarranted sentencing disparities.  And

2    all things considered, I concur with the probation office's

3    assessment that a penalty of 28 months of imprisonment on

4    Count 1, 6 months of imprisonment on Count 2, and 3 months of

5    imprisonment on Count 3, with all three terms to run

6    concurrently, is sufficient but not greater than necessary to

7    reflect the seriousness of the instant offense, promote

8    deterrence, protect the public from future crimes that may be

9    committed by you, and, given the similar cases that I've had,

10   avoid unwarranted disparities among defendants with similar

11   histories who have been convicted of similar crimes.

12       Consistent with the probation office's recommendation, I

13   will impose that term of imprisonment, and consistent with what

14   I have done in the past with respect to Mr. Stewart, I will

15   impose a period of 73 months -- excuse me -- with respect to

16   Mr. Hawkins, I will impose a period of 73 months of supervised

17   release on Count 1.  And I'm doing that to permit you to

18   rehabilitate yourself and integrate yourself fully back into

19   society.

20       Therefore, based on my consideration of all of the

21   3553(a) factors, I will now state the sentence to be imposed.

22       It is the judgment of the Court, that you, Adam Chazin,

23   are hereby committed to the custody of the Bureau of Prisons

24   for concurrent terms of 28 months on Count 1, 6 months on

25   Count 2, and 3 months on Count 3.

1    You are further sentenced to serve a term of 73 months

2  of supervised release on Count 1 and to pay a $100 special

3  assessment on Count 1, a $100 special assessment on Count 2,

4  and a $50 special assessment on Count 3.  The Court finds that

5  you do not have the ability to pay a fine and, therefore,

6  waives imposition of a fine in this case.  The Court also finds

7  that you do not have the ability to pay the $5,000 special

8  assessment pursuant to the Justice for Victims of Trafficking

9  Act of 2015 and, therefore, waives the imposition of that

10  assessment.

11    Turning to restitution, the statutory provision

12  governing mandatory restitution in child pornography cases such

13  as this one requires the Court to order restitution in an

14  amount that reflects the defendant's role in the causal process

15  that underlies the victim's losses, but which is no less than

16  $3,000.  This Court has reviewed the restitution request that

17  the government has submitted in this case on behalf of the

18  three identified victims.  And although the Court does not

19  doubt the victims have suffered losses as detailed in those

20  requests, the Court finds that the government's submissions do

21  not establish that Mr. Chazin's specific instances of

22  possession proximately caused the losses in a manner that gives

23  rise to a need to impose more than the minimum amount.

24    Accordingly, the Court will award restitution of $3,000

25  per victim.  And, therefore, Mr. Chazin is further sentenced to

1   pay restitution in the total amount of $9,000.  Special

2   assessment and restitution as to Count 1 are immediately

3   payable to the Clerk of the Court for the U.S. District Court

4   for the District of Columbia.  Within 30 days of any change of

5   address, you shall notify the Clerk of the Court of that change

6   until such time as the financial obligation is paid in full.

7   The Court waives any interest or penalties that may accrue on

8   unpaid balances.

9        Restitution payments shall be made to the Clerk of the

10  Court for the U.S. District Court for the District of Columbia

11  for disbursement to the victims as follows:  to Maureen in the

12  amount of $3,000, to Pia in the amount of $3,000, and to Lily

13  in the amount of $3,000.

14       The special assessments as to Counts 2 and 3 are

15  immediately payable to the Budget and Finance Office of the

16  District of Columbia Superior Court for deposit into the Crime

17  Victims Compensation Fund.  Within 30 days of any change of

18  address, you shall notify the Budget and Finance Office of the

19  change until such time as that financial obligation is paid in

20  full.  The Court waives any interest or penalties that may

21  accrue on unpaid balances.

22       Within 72 hours from release -- of release from custody,

23  you shall report in person to the probation office in the

24  district to which you are released.  While on supervision, you

25  shall submit to the collection of DNA; you shall not possess a

1    firearm or other dangerous weapon; you shall not possess an

2    illegal controlled substance; and you shall not commit another

3    federal, state, or local crime.

4         You should also abide by the general conditions of

5    supervision adopted by the U.S. Probation Office, as well as

6    the following special conditions, which I will state and then

7    describe the reasons for as the D.C. Circuit requires.

8         Sex offender registration.  You shall comply with the

9    sex offender registration requirements for convicted sex

10   offenders in any state or jurisdiction to where you reside, are

11   employed, carry on a vocation, or are a student.  Imposing sex

12   offender registration as a condition of supervised release is

13   the least restrictive means necessary of protecting the public

14   from future sex crimes.

15        Sex offense assessment.  You must participate in a sex

16   offense-specific assessment.  This condition is imposed because

17   it is the least restrictive means of providing you with

18   treatment to rehabilitate yourself so you can move forward from

19   the underlying offense and will also deter future conduct

20   involving sex offenses.  You must pay a percentage of the cost

21   of the assessment as determined by the probation office.

22        Sex offender treatment.  You must participate in a sex

23   offense-specific treatment program and follow the rules and

24   regulations of that program.  The probation officer will

25   supervise your participation in the program.  You must pay a

1    percentage of the cost of the program as determined by the

2    probation office.  As with the sex offense assessment

3    condition, this condition is imposed because it is the least

4    restrictive means of providing you with treatment to

5    rehabilitate yourself so you can move forward from the

6    underlying offense and will also deter future conduct involving

7    sex offenses.

8         Contact restrictions.  You must not have direct contact

9    with any child you know or reasonably should know to be under

10   the age of 18, with the exception of your own children, without

11   the permission of the probation office.  If you have any direct

12   contact with a child you know or reasonably should know to be

13   under the age of 18 without the permission of the probation

14   office, you must report this contact to the probation officer

15   within 24 hours.  Direct contact includes written

16   communication, in-person communication, or physical contact.

17   Direct contact does not include incidental contact during

18   ordinary daily activities in public places.  This is the least

19   restrictive means necessary of protecting the public from

20   future sex crimes against minors and deterring future offenses

21   and encouraging registration.

22        Computer monitoring.  You must allow the probation

23   officer to install computer monitoring software on any

24   computer, as defined by 18 U.S.C. § 1030(e)(1), that you use.

25   Given your offense of conviction involved the use of a computer

1   and the internet, this condition is the least restrictive means

2   of protecting the public from future offenses, deterring you

3   from committing any future offenses, and aiding in treating

4   your correctional needs.

5        Computer search.  You must submit your computers as

6   defined in 18 U.S.C. § 1030(e)(1) or other electronic

7   communication or data storage devices or media to a search.

8   You must warn any other people who use these computers or

9   devices capable of accessing the internet that the devices may

10  be subject to searches pursuant to this condition.  The

11  probation officer may conduct a search pursuant to this

12  condition only when reasonable suspicion exists that there is a

13  violation of a condition of supervision and that the computer

14  or device contains evidence of this violation.  Any search will

15  be conducted as -- at a reasonable time and in a reasonable

16  manner.

17       The Court finds that this condition is reasonably

18  related to the nature and circumstances of your offense, the

19  need to deter criminal conduct, protection of the public, and

20  treatment of your correctional needs because the nature of your

21  offense indicates some degree of risk of recidivism and because

22  any repeated criminal conduct of this nature could well be

23  carried out on your computer.

24       Financial information disclosure.  You must provide to

25  the probation officer access to any requested financial

1    information and authorize the release of any financial

2    information until the financial obligations are paid in full.

3    The probation officer may share financial information with the

4    United States Attorney's Office.  This condition is the least

5    restrictive means of ensuring that restitution is provided to

6    the victims of the offense for which you have been convicted.

7    You must not incur new credit charges or open additional lines

8    of credit without the approval of the probation office until

9    the financial obligations are paid in full.

10          As with the financial information disclosure condition,

11   this condition is the least restrictive means of ensuring that

12   restitution is provided to the victims of the offense for which

13   you've been convicted.

14          Restitution obligation.  The defendant shall pay the

15   balance of the -- of any restitution owed as previously

16   indicated at a rate of no less than $50 each month and shall

17   provide verification of the same to the probation office.  Like

18   the other two financial conditions, this obligation is the

19   least restrictive means possible of ensuring that restitution

20   is provided to the victims of the offense for which you've been

21   convicted.

22          The probation office shall release the presentence

23   investigation report to all appropriate agencies in order to

24   execute the sentence of the Court.  Treatment agencies shall

25   return the presentence report to the probation office upon the

1    defendant's completion or termination from treatment.

2           Pursuant to your plea agreement and Rule 32.2(a) of the

3    Federal Rules of Criminal Procedure, you, Mr. Chazin, are

4    ordered to forfeit the items that are listed in your plea

5    agreement.

6           Mr. Chazin, you also have a right to appeal the sentence

7    imposed by this Court under the limited circumstances laid out

8    in your plea agreement.  If you choose to appeal, you must file

9    an appeal within 14 days after the Court enters judgment.  If

10   you are unable to afford the cost of an appeal, you may request

11   permission from the Court to file an appeal without cost to

12   you.

13          Let me ask counsel if there are any objections to the

14   sentence imposed that are not already noted on the record.

15          Mr. Onorato?

16          MR. ONORATO:  No, Your Honor.  I -- I would ask if

17   the Court would be willing to consider suspending the

18   restitution payments until Mr. Chazin is released from prison.

19          THE COURT:  Let me ask probation and the government

20   to weigh in on that.  Ordinarily what happens, I think, is the

21   defendants start paying restitution from prison through their

22   prison accounts.  And I'm not sure why, Mr. Onorato, you think

23   that would not be an appropriate requirement here.

24          MR. ONORATO:  So, generally speaking, his parents

25   will give him money to put on telephone or commissary, and he

1    won't be paying the restitution, they'd be paying the

2    restitution when, you know, they take the money from his

3    account.  That's -- that's typically what I find happens in

4    these instances.

5              THE COURT:  Ms. Larson, does the government have any

6    view of this?

7              MS. LARSON:  No, Judge.  Our understanding is similar

8    to the Court's; that the restitution obligation begins during

9    sentencing and it can be obtained through whatever type of

10   accounts they have while they're incarcerated.  I -- I don't

11   see a difference here, but I've not had that specific request

12   from defense counsel before.

13             THE COURT:  Ms. Willett, have you heard of this

14   before?

15             THE PROBATION OFFICER:  I have seen it happen before,

16   Your Honor.  It's been a while.  And the prison does take a

17   percentage of whatever is on the prison books to go towards any

18   court-order obligations, whether it be restitution or costs

19   for -- et cetera.

20         I would ask one thing only; that the Court consider

21   waiving the interest that would accrue on any restitution

22   payments while he is in custody.

23             THE COURT:  Yes, I will waive the interest.

24         But, Mr. Onorato, I'm not going to require that

25   restitution be suspended until he is released.  I think we're

1    just going to go with what we ordinarily do, which is allow

2    restitution to begin immediately, but there will be no interest

3    or costs accrued.

4         Is there any other objection to the sentence that are

5    not already -- that is not already noted on the record?

6              MR. ONORATO:  No, Your Honor.

7              MS. LARSON:  Not from the government, Judge.

8              THE COURT:  All right.  So that concludes the Court's

9    judgment.

10        We now have to consider how to have Mr. Chazin surrender

11   for execution of sentence.  Part of the reason why we decided

12   to proceed as a joint plea and sentencing was because of the

13   requirement that defendants who are found guilty or plead

14   guilty to this particular offense are not to be released, that

15   they are to be immediately detained.

16        So what I would like to do, just given the

17   circumstances, the video, and, you know, us not being in court,

18   is to allow for self-surrender at the first, you know, possible

19   juncture, which I think is tomorrow.  So let me ask whether the

20   probation office objects to self-surrender under these

21   circumstances.  And let me have the government and -- and

22   defense counsel weigh in.

23             THE PROBATION OFFICER:  No, Your Honor, we don't

24   object to self-surrender under those circumstances.

25             THE COURT:  Ms. Larson?

1          MS. LARSON:  No, Judge.  And if there's a -- I don't

2     remember in this particular case if Mr. Chazin has been booked

3     through the marshals.  So if there's a booking order that's

4     necessary, I will certainly work with probation and defense

5     counsel to get that.  I know he's been processed by law

6     enforcement, and I believe he should have been processed by the

7     marshals.

8          Because the way the case came in, he was actually

9     arrested that day on the weapons charges and then we did

10    everything else later.  So if there's anything missing, I will

11    get it to the Court; but I do think he's probably been

12    processed because he was actually arrested on the day of the

13    search warrant.

14         THE COURT:  Yes, I think -- Ms. Franklin, who is my

15    ordinary courtroom deputy, is on vacation.  Ms. Harris is

16    standing in, but I think Ms. Franklin had already, sort of,

17    arranged to have him surrender tomorrow.

18         Mr. Onorato, is that your understanding of where we are?

19         MR. ONORATO:  Yes, Your Honor.

20         THE COURT:  Okay.  So I will allow you, Mr. Chazin,

21    to self-surrender.  You've been on supervision.  You will

22    continue with all of the conditions that have previously been

23    imposed until it's time for you to report to jail, which will

24    be no later than noon tomorrow, Tuesday, May 25th.  You will

25    report to the D.C. DOC Central Detention Facility located at

1    1901 D Street, Southeast.  I will post a self-surrender order

2    to ECF this afternoon.  Your lawyers will then need to make

3    sure that you have a paper copy of that order.  When you report

4    to jail, be sure to bring a copy of the self-surrender order,

5    your photo ID, and any necessary medications.  Do not bring any

6    personal property.  And report to the rear control tower and

7    inform DOC staff you are there to self-surrender.

8        Let me caution you about your conduct while you are out

9    prior to this self-surrender process.  You are required to

10   continue to follow the conditions of release as they've been

11   applied to your case and as the pretrial service office has

12   directed and will continue to direct.  If you violate any of

13   the conditions, an arrest warrant may issue and you may be

14   detained for failing to comply with the conditions of release

15   prior to your voluntary surrender.  Even more important, the

16   penalties for failure to actually surrender for service of a

17   serious -- of a sentence are serious.  Such a violation is a

18   separate offense for which you could be sentenced to a fine or

19   imprisonment for up to ten years or both.

20       Am I clear about that?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  All right.  Let me ask Mr. Onorato if you

23   have any recommendations about an incarceration facility.

24           MR. ONORATO:  We do, Your Honor.  We would

25   respectfully request that the Court place FCI Petersburg.

1          THE COURT:  All right.  I will put in the judgment

2     FCI Petersburg.

3          Let me just also say that in the little period of the

4     break, we looked at the sealing scenario.  And I think we do

5     still, Mr. Onorato, have your -- the letters completely sealed.

6     So we may need to -- we'll probably put up an order that

7     directs you with respect to making more limited redactions

8     concerning those attachments to your sentencing memoranda.

9          MR. ONORATO:  Very well.  I'll double-check, and I'll

10    work with your chambers and Ms. Franklin and Your Honor's law

11    clerk.

12         THE COURT:  All right.  Is there anything else that

13    we need to address today?

14         MR. ONORATO:  No, Your Honor.

15         MS. LARSON:  Not from the government, Judge.

16         THE COURT:  All right.  This concludes the Court's

17    sentencing.

18         Mr. Chazin, good luck.

19         (The proceedings concluded at 12:31 p.m.)

20

21

22

23

24

25

CERTIFICATE OF OFFICIAL COURT REPORTER

I, Nancy J. Meyer, Registered Diplomate Reporter, Certified Realtime Reporter, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenograph notes and is a full, true, and complete transcript of the proceedings to the best of my ability.

Dated this 22nd day of March, 2022.

/s/ Nancy J. Meyer
Nancy J. Meyer
Official Court Reporter
Registered Diplomate Reporter
Certified Realtime Reporter
333 Constitution Avenue Northwest
Washington, D.C. 20001